ROBERT R. KENNY, Plaintiff-Appellee, *v.* LAKEWOOD ENGINEERING AND MANUFACTURING COMPANY, Defendant and Counterdefendant-Appellee and Cross-Appellant.—(JOSEPH T. RYERSON AND SONS, INC., Defendant and Counterplaintiff-Appellant and Cross-Appellee.)

First District (3rd Division)    No. 62826

Opinion filed June 13, 1979.—Rehearing denied June 18, 1980.

McGILLICUDDY, J., dissenting.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (James T. Ferrini, of counsel), for appellant Joseph T. Ryerson and Sons, Inc.

Schaffenegger, Watson and Peterson, Ltd., of Chicago (Jack L. Watson, of counsel), for appellant Lakewood Engineering and Manufacturing Company.

Eugene I. Pavalon, of Chicago (Peter B. Carey and Richard J. Prendergast, of counsel), for appellee Robert R. Kenny.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Robert R. Kenny instituted a negligence action to recover damages for personal injuries. He was struck in the face by a steel plate welded to two stakes as the plate was being removed from the side of a flatbed trailer owned by the defendant, Joseph T. Ryerson and Sons (Ryerson). The individual moving the steel plate was an employee of the defendant, Lakewood Engineering and Manufacturing Company (Lakewood). Ryerson and Lakewood filed counterclaims against each other seeking indemnity. Ryerson subsequently amended its counterclaim to add a claim for contribution from Lakewood. The jury returned a verdict of $175,000 in favor of the plaintiff and against both Ryerson and Lakewood. Judgment was entered on the verdict. The court directed verdicts for each counterdefendant on the claims for indemnity and contribution. Ryerson and Lakewood appeal from the judgments entered against them in favor of the plaintiff and from the judgments against them on their counterclaims.

The plaintiff was employed as a tractor-trailer driver for the Willett Company. On the date of occurrence, May 5, 1972, he delivered a trailer from the Ryerson premises to the Lakewood plant. The trailer was a flatbed, 35 feet long and 8 feet wide. Located along the perimeter of the trailer were pockets or sockets spaced approximately 14 inches apart. Metal stakes were fitted into the sockets in order to restrain the material loaded on to the bed of the trailer. On each side of the trailer, located toward the front or nose end, there was a steel plate welded to two stakes to which Ryerson would sometimes affix a sign bearing its name. The trailer was loaded with 11 skids of steel, weighing approximately 4000 pounds each. There was a tarp covering the trailer.

Ralph Gallardo, a Lakewood employee, testified that after the plaintiff drove the truck into the loading area at Lakewood, he helped the plaintiff remove the sign from the right side of the trailer. The stakes had already been removed from that side although Gallardo did not see who had taken them out. Gallardo then unloaded the steel situated on the right side of the trailer bed with the aid of a forklift truck. He explained that the forklift had a lift capacity of approximately 5000 pounds.

After unloading the right side of the trailer, Gallardo came around to the left side. He noted that the plaintiff was attempting to remove the sign but that the plaintiff was "having a pretty hard time with it." Gallardo then placed one of the prongs of the forklift under the sign at an angle. Gallardo claimed that "before I started taking the sign off with the fork, I told [the plaintiff] to move back some," and that he saw the plaintiff move back about three or four feet. Gallardo then applied pressure to the sign with the forklift but the sign did not move. However, when he applied pressure a second time, the sign popped out of the socket and, arching to the right, struck the plaintiff in the face.

Gallardo testified that at the time he decided to use the forklift to remove the sign he noticed that "it was pretty rusted solid in there." On cross-examination he stated he did not know if it was rust that caused it to stick. It was not unusual to observe trucks where a sign or stake was wedged. He also stated that on other occasions he had used a crowbar to dislodge a stake or a sign and he had also used the forklift to remove a stake or sign prior to plaintiff's accident.

The plaintiff testified that he and Gallardo removed the sign on the right side of the trailer as well as the stakes on both the right and left sides. While removing the stakes the plaintiff was standing on the ground rather than on the bed of the trailer. The plaintiff proceeded to remove the tarp from the left side. He began at the rear of the trailer and worked forward. At the time he was struck he was bent over to pull the tarp. He did not remember if Gallardo told him to step back a little. Nor did he know what Gallardo was doing at the time he was struck.

Peter DeLuca testified that as the shipping clerk at Lakewood he was responsible for supervising two forklift drivers, including Gallardo. He stated that there was no training program for these drivers at Lakewood. However, it was not the custom of Lakewood to use a forklift to try to remove a sign or other obstacle and that he instructed the drivers not to do so.

The plaintiff introduced evidence that while Ryerson's periodic maintenance program provided for the servicing of trailers every three months the trailer which he drove on May 5, 1972, was not serviced for four months prior to the accident. The plaintiff also introduced evidence to show that Ryerson knew that Lakewood would use a forklift to unload the trailer and that this method of unloading would require the removal of the signs.

Ryerson introduced evidence that the records upon which the plaintiff relied in establishing that the trailer was serviced a month behind schedule were not correct, since the wrong date was entered thereon. The Willett foreman of mechanics testified that while he had seen signs fitted into the slots on a trailer which had surface rust on them, he had never seen one so rusted that it was difficult to take out. Finally, Ryerson introduced the testimony of two Willett mechanics, who service the trailers at Ryerson, on the method of dislodging signs which were stuck in place. One of them testified that if a sign was rusted and could not be taken out, a pry bar and fulcrum would be used. If that did not work a torch would be used. The other testified that if a sign was not readily removable he would try to pry it off or use grease and oil. However, he stated that he never saw a sign that was not readily removable because it was "rusted solid."

Ryerson first argues that the court was in error in failing to direct the verdict in its favor because the plaintiff had failed to prove facts which established the existence of a duty, the breach of that duty and proximate cause.

In arguing that there was no duty Ryerson alleges that the sign was not inherently dangerous and the injury could not have been foreseen as a natural and probable consequence of the condition. (*Driscoll v. C. Rasmussen Corp.* (1966), 35 Ill. 2d 74, 219 N.E.2d 483; *Donehue v. Duvall* (1968), 41 Ill. 2d 377, 243 N.E.2d 222.) The substance of this argument centers around the assertion that the circumstances of the case are extraordinary and that the defendant could not anticipate what it characterizes as the bizarre or far-fetched conduct of Gallardo. Such conduct, according to Ryerson, is only a remote possibility. Ryerson points to the testimony of the employees of Willett stating that if a sign is fixed in place they would remove it by using a pry bar or fulcrum and if that did not work they would torch it out or use a lubricant.

■■ We do not agree with Ryerson's characterization of Gallardo's conduct. Force was necessary and an immediate source of that force was available, the forklift. We cannot say as a matter of law that the use of the forklift was not reasonably foreseeable. Indeed, that the force was foreseeable is illustrated by the fact that Gallardo in the past had used the same forklift to remove signs from the trailer and DeLuca found it necessary to instruct forklift drivers not to do it. The fact that the object is not inherently dangerous does not preclude recovery. Ryerson seeks to make an analogy between the case and *Donehue*. In *Donehue* dirt and glass, although not inherently dangerous by themselves, became dangerous when they were put together and thrown at the plaintiff. The court concluded that the wrongful act of the party who threw the clod of dirt and glass could not be reasonably foreseen. In the instant case, it was entirely appropriate to expect that the item not inherently dangerous, the sign, would have to be removed from the socket, and we do not believe that the analogy is appropriate.

The argument that there is no evidence of a breach of any duty is based on Ryerson's assertion that no evidence was adduced to support the conclusion that the sign was stuck and that the friction was caused by rust. We believe the evidence was abundant to show that the sign was stuck and that it was stuck because of rust. Gallardo stated that the sign was rusted solid and there was rust on the rails and all around the peg in which the stake was placed. The fact that he later stated on cross-examination that he did not know whether the rust caused the sign to stick made the issue a question of fact for the jury.

Ryerson's argument that the sole proximate cause of the plaintiff's injury was the misconduct of Gallardo and the negligence of the plaintiff is premised on Ryerson's assertion that neither the injury nor the conduct of Gallardo was foreseeable. As we stated earlier in considering the argument on duty, we believe it was entirely foreseeable that the stakes would be removed by the user of the truck. It is not necessary that the exact conduct be predicted. *Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 311 N.E.2d 128.

Ryerson and Lakewood contend that the court was in error in directing the issue of contributory negligence in favor of the plaintiff. They assert that whether the plaintiff was truthful and was justified in believing he was in a position of safety is preeminently an issue of fact for the jury. They cite *Francis v. Francis* (1973), 9 Ill. App. 3d 90, 291 N.E.2d 857, where the court said when one voluntarily and unnecessarily assumes a position of danger he cannot recover for an injury from a risk incident to the position in which he has placed himself. *Francis*, 9 Ill. App. 3d 90, 92, 291 N.E.2d 857, 858.

Ryerson and Lakewood rely on the testimony of Gallardo to the

effect that he told the plaintiff to move back and the plaintiff moved back. Kenny testified that he never saw Gallardo on the left hand side of the trailer and he did not remember if Gallardo told him to step back a little.

The rule for directing a verdict is stated in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513, where the court said, "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." The trial court found that the record was "silent as to any act on [the plaintiff's] part which could by any stretch of the definition of contributory negligence to be applied to him."

■■ We believe the trial court's conclusion was correct. If the plaintiff heard Gallardo he acceded to his command and moved back a distance apparently acceptable to Gallardo because Gallardo proceeded to apply the pressure to the sign with the forklift. The plaintiff did not participate in Gallardo's action. The evidence supports a finding that the plaintiff did not unnecessarily assume a position of danger.

Ryerson also asserts that the court was in error in excluding evidence of a loan agreement. The plaintiff and Lakewood entered into a loan agreement whereby Lakewood was to lend the plaintiff $75,000. The plaintiff was to repay Lakewood out of any recovery received from Ryerson. Lakewood was to remain a defendant in the proceeding and if a judgment was rendered only against Lakewood alone it would be responsible for that judgment even if it was beyond the $75,000. If Ryerson were also found to be liable then the plaintiff was to collect the entire judgment from Ryerson and reimburse Lakewood.

When this agreement was revealed at the commencement of the trial, Ryerson sought to have the jury advised of the existence of the agreement. The court denied the request. After the jury was selected Ryerson again made the request. Ryerson said that the plaintiff had knowledge of the agreement and that the plaintiff was biased as a result of the financial arrangement. The trial court denied this second request also.

Loan agreements were sanctioned by the Illinois Supreme Court in the case of *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382. The most recent case concerning loan agreements is *Casson v. Nash* (1978), 74 Ill. 2d 164, 384 N.E.2d 365. The trial court in *Casson* permitted the defendant to cross-examine the plaintiff regarding the agreement. The party loaning the money was not a party to the proceedings. The supreme court found this to be error and stated that the relevant principle emerging from *Reese* is:

"[W]hen a *witness whose interest in the outcome of the case is not apparent* to the jury may be influenced by the existence of a

loan-receipt agreement, the jury may properly consider the effect of the agreement on the credibility of that witness. The plaintiffs here certainly stood to gain by a recovery against [the defendant] but this is true in every case. A plaintiff always has an interest in his own recovery. Because the plaintiff's interest is already apparent (see McCormick, Evidence sec. 274, at 665 (2d Ed. 1972)), there is no need for the jury to be informed about the loan-receipt agreement." (Emphasis added.) *Casson,* 74 Ill. 2d 164, 169, 384 N.E.2d 365, 367.

The credibility of a witness may be impeached by the showing of bias. When a witness appears for the defendant in an accident case the fact that he has made a claim against the defendant and has been paid a sum in settlement tends to show bias in favor of the defendant. (McCormick, Evidence §40, at 79 (2d ed. 1972).) However, the promotion of the settlement of disputes is a public policy which would be discouraged if offers of compromise were admitted into evidence. (McCormick, Evidence §274, at 663 (2d ed. 1972).) With reference to a present party's compromise with a third person, the section of McCormick referred to in the above quote from *Casson* states:

"And it further seems reasonable that if the witness has been paid or promised money in compromise of his claim, this may likewise be shown in impeachment, as evidence of bias. The need for evaluating the credibility of the witness may be as insistent as the policy of encouraging compromise. If, however, the witness sought to be impeached by showing the compromise with a third person, is one of the present parties, the question is more debatable. The danger that the evidence will be used substantively as an admission is greater, and as the party's interest is apparent the need for additional evidence on credibility is less. This impeachment of party-witnesses, however, has occasionally been sanctioned." McCormick, Evidence §274, at 665 (2d ed. 1972).

The court stated very clearly in *Casson* that the interest of the plaintiff as he was testifying against the defendant was apparent. Consequently, there was no need for the jury to be informed of the loan-receipt agreement. The policy of encouraging compromise thus outweighed the need to evaluate the credibility of the witness.

Using those same principles to evaluate the instant case we come to a different conclusion. In *Casson* the plaintiff's possible bias against the defendant was quite obvious because there was only one defendant. The possible bias the plaintiff here may have in favor of one corporate defendant against another is not apparent. In weighing these considerations we believe the need to evaluate the credibility of the witness is more insistent than the policy of compromise.

■ While we believe that the court was in error in excluding any

cross-examination on the loan agreement we do not believe that it constituted reversible error. (See *Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 94 N.E.2d 847.) The evidence against Ryerson was obtained mainly from its maintenance records, the testimony of the employees of Ryerson and the employees of Willett and the testimony of Gallardo of Lakewood. The testimony of the plaintiff against Ryerson was not significant. Impeachment for bias would only be against the plaintiff because he was the only witness with knowledge of the agreement.

Ryerson next argues that it was entitled to indemnity from Lakewood as a matter of law and that the court was in error in directing a verdict in favor of Lakewood on Ryerson's counterclaim against Lakewood for indemnity. Lakewood in turn claims that the court was in error in directing a verdict in Ryerson's favor on Ryerson's counterclaim for indemnity.

Ryerson's complaint for indemnity against Lakewood alleges that Ryerson is being charged by the plaintiff with negligence in improperly maintaining flatbed trailers so that the sign attached thereto could not be readily removed. The essential contention of Ryerson is that Ryerson's liability rests on the alleged fact that Ryerson only created a dangerous condition. Ryerson asserts that the rusty sign standing alone and used in its customary manner had no tendency to injure. Cited are cases to support its argument that Lakewood was actively negligent.

With the contention that Lakewood's conduct can only be classified as active there can be little doubt. The sign required an active and potentially negligent act by Lakewood to cause the injury. The question is whether Ryerson's conduct can be considered passive. If Ryerson were in fact guilty of active negligence there can be no indemnity. *Carver v. Grossman* (1973), 55 Ill. 2d 507, 514, 305 N.E.2d 161, 164.

The propositions that govern this issue have been clearly stated. In *Moody v. Chicago Transit Authority* (1974), 17 Ill. App. 3d 113, 117, 307 N.E.2d 789, 792, the court observed that the usual dictionary definition of the words "active" and "passive" do not apply. These are words of art that must be applied in accordance with concepts worked out by the courts of review on a case by case basis. Inactivity or passivity may well constitute the primary cause for the mishap. Mere motion does not define the distinction between active and passive negligence. In *Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445, 449, 322 N.E.2d 58, 60, the court said that the prevailing law holds that a tortfeasor may seek to impose indemnity upon another wrongdoer if there exists a qualitative distinction between the negligence of the two tortfeasors.

In viewing the facts of the instant case we do not believe that the conduct of Ryerson may be termed passive, nor do we believe that there is qualitative distinction between the conduct of the parties. Ryerson knew that when the truck was used that the stakes would have to be

removed. It was also aware that the stakes had a tendency to rust. It had mechanics who in fact would check to see if the stakes were easily removable. Ryerson's knowledge of the intended use of the truck and the intended problems with the stakes precludes it from contending that its conduct was merely passive and that there was a qualitative distinction between the conduct of Ryerson and Lakewood.

Ryerson claims in the alternative that it should be entitled to proceed against Lakewood for contribution. At the time of this occurrence contribution among joint tortfeasors was not allowed in Illinois. (*Carver v. Grossman.*) Since that time the Illinois Supreme Court has considered that issue. It was held in *Skinner v. Reed-Prentice Package Machinery Co.* (1978), 70 Ill. 2d 1, 374 N.E.2d 437, that there was no valid reason for the continued existence of the no-contribution rule. That court decided, however, that the decision would be effective prospectively only.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA, J., concurs.

Miss JUSTICE McGILLICUDDY, dissenting:
I respectfully dissent from the majority's affirmance of the verdict against Ryerson. In my view the plaintiff, as a matter of law, did not establish that Ryerson owed him a duty to protect him from the injuries he suffered.

The existence of a duty was discussed by the supreme court in *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617. In *Cunis* the plaintiff was a passenger in an automobile which collided with another vehicle. The plaintiff was thrown from the automobile approximately 30 feet to a parkway, where one of his legs was impaled upon the remains of a drainpipe protruding from the ground. Count V of the plaintiff's complaint alleged that the Village of LaGrange permitted a dangerous and broken drainpipe to remain on the parkway and that this negligence was the proximate cause of his injuries.

The supreme court upheld the trial court's dismissal of count V for failure to state a cause of action. The court determined, as a matter of law, that the remote possibility of the occurrence did not give rise to a legal duty on the part of the village to provide against the injury.

In discussing the question of foreseeability, the court quoted the words of Dean Prosser, which are equally applicable in the instant case:
"No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely

to occur that the risk, although recognizable, would commonly be disregarded." (Prosser, Torts §31, at 146 (4th ed. 1971).)

The court also explained that in judging what harm is legally foreseeable, it considered "what was apparent to the defendant at the time of his now complained of conduct, not what may appear through exercise of hindsight." *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 376.

The plaintiff alleges that Ryerson was negligent in allowing the sign to rust in the sockets of the trailer, thereby making the removal of the sign difficult. However, I believe that Kenny's being struck by the sign flying out of the sockets was not a foreseeable result of Ryerson's alleged negligence. Although Ryerson knew that the sign would have to be removed in order to unload the tractor-trailer, I do not believe that the ordinarily prudent person would reasonably anticipate that a forklift, an instrument capable of lifting approximately 5,000 pounds, would be used to dislodge the sign. There was ample evidence that when a sign was stuck, the usual method to dislodge the sign was to use a crowbar, torch or lubricant. In addition, DeLuca testified that it was not the practice at Lakewood to use a forklift to remove signs from the trucks, and that he instructed the forklift drivers, including Gallardo, not to do so. Kenny's injury was caused by the propulsion of the sign out of the sockets by the use of the forklift, an intervening cause which Ryerson could not have foreseen.

The majority contends that the use of the forklift was foreseeable as illustrated by the evidence that Gallardo had used the same forklift on prior occasions to remove signs from the trailer. This evidence would establish foreseeability only on Lakewood, Gallardo's employer, but not on Ryerson. The record discloses that Ryerson had no notice and could not reasonably be expected to have notice of Gallardo's prior misconduct.

The test of foreseeability is not to bring within the scope of the defendant's liability every injury which possibly could occur. Foreseeability means that which is objectively reasonable to expect, not merely what might conceivably occur. (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1.) The effect of the majority in affirming the jury's verdict against Ryerson, is to hold Ryerson responsible for every possible consequence of its action.

Because I believe Ryerson could not have foreseen nor anticipated the injury to the plaintiff resulting from the use of the forklift to remove the sign, an intervening and not foreseeable cause, I would reverse the jury's verdict against Ryerson.

I concur with the majority in its affirmance of the trial court's directing the issue of contributory negligence in favor of the plaintiff. I believe it is unnecessary to comment on the other issues raised in the appeal.