KATHLEEN McGRATH *et al.*, Plaintiffs-Appellants, v. CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Defendant-Appellee.

First District (6th Division)   No. 1—88—1845

Opinion filed October 27, 1989.

George M. Elsener & Associates, of Chicago (George M. Elsener and Francis William Golden, of counsel), for appellants.

Chicago and North Western Transportation Company, of Chicago (Daniel J. Mohan, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

Kathleen and James McGrath, plaintiffs below and appellants here, sued Chicago and North Western Transportation Co. (C&N) for damages from a collision between two cars. This accident occurred on a public road which had been partly blocked while C&N performed repair work. After the jury returned a verdict for the defendant, the plaintiffs filed a motion for a judgment *n.o.v.* on liability and a new trial on damages or, in the alternative, a new trial on all issues. The trial judge denied this motion.

The McGraths now appeal, asserting they were deprived of a fair trial and are entitled to a new trial because: (1) the trial court should have declared a mistrial after the defense counsel asked a question about Kathleen McGrath's settlement with her father, James McGrath; and (2) the trial court refused to allow jury instructions on statutory sections that prohibit unauthorized signs and obstructions on highways. On appeal, the McGraths ask that a new trial be granted.

On July 30, 1982, two workers from C&N performed emergency road repairs on a train gate at Euclid Avenue in Arlington Heights. This gate needed immediate repair because it protected the intersection of a busy street and a heavily used commuter rail track. During

part of the repair work, the workers blocked the westbound side of Euclid Avenue with their truck, marked the area with cones and flares, and rerouted traffic in both directions down the open eastbound side.

While Euclid Avenue was rerouted, James McGrath proceeded east on Euclid, in the inside lane temporarily reserved for westbound traffic. Another driver, Andrew Bartoli, was driving east in the outside lane, which now carried all of the eastbound cars except McGrath's. Bartoli then turned left from his outside lane. McGrath, driving east on the inside, or temporary westbound lane, broadsided Bartoli.

James McGrath and his passenger, his daughter Kathleen, sued Bartoli and C&N. The McGraths claimed damages to James' car and injuries to Kathleen. The two defendants filed counterclaims against James McGrath and cross-claims against each other. Additionally, C&N filed a third-party action against the company whose employee damaged the gate. All of these claims have been disposed of by court action or settlement except one. The action that remained was that filed by the McGraths against C&N, which is now the only defendant.

At trial, C&N called James McGrath as an adverse witness. C&N had already cross-examined McGrath after the plaintiffs' direct. On the defendant's direct, C&N asked a question about a $5,000 settlement between James McGrath and his daughter. The McGraths' counsel objected three times while C&N persisted in asking the entire question. In chambers, the C&N counsel explained that the purpose of the settlement question was to show bias by James McGrath, who had been a potential defendant in a third-party action by C&N. Since McGrath had settled, he could inflate Kathleen's injury claims without fear that he might have to pay part of the final damages himself. The trial judge stated that this matter should have been discussed in chambers, not introduced in a question before the jury.

The McGraths' counsel then moved for a default and judgment against the defendant. At that time, the trial judge said he would reserve a "motion on a mistrial." The McGraths' counsel did not press the point or ask for an immediate ruling on the mistrial motion. When the parties returned to the courtroom, the trial judge sustained the McGraths' objection to the question about settlement and instructed the jury to disregard that question.

The McGraths also asked the court to take judicial notice of some provisions from the Illinois Commerce Commission, the Manual on Uniform Traffic Control Devices, and section 11—1416 from the Illinois Vehicle Code (Motor Vehicle Code) (Ill. Rev. Stat. 1981, ch. 95½, par. 11—1416). The trial judge refused to do so on the grounds that the cited provisions did not relate to the evidence presented in the case.

At the end of the trial, the McGraths asked for jury instructions based on sections 11—310 and 11—1303 of the Illinois revised statutes. (Ill. Rev. Stat. 1981, ch. 95½, pars. 11—310, 11—1303.) Section 11—310 makes it a misdemeanor to display any "unauthorized sign, signal [or] marking" on any highway. (Ill. Rev. Stat. 1981, ch. 95½, par. 11—310.) Section 11—1303 provides that "[s]topping, standing or parking" is "prohibited in specified places." (Ill. Rev. Stat. 1981, ch. 95½, par. 11—1303.) As stated, because the McGraths had no evidence specifically tied to these sections, the trial judge did not allow the instructions.

On October 20, 1987, the jury returned a verdict for the defendant C&N. After the verdict was returned, but before it was entered, the McGraths renewed the motion for a mistrial. The trial judge stated that he would rule on the mistrial motion before entering judgment on the verdict. Nonetheless, there is no mention of the trial judge's ruling on the motion in the record, although the judgment was entered on October 21, 1987.

On November 10, 1987, the McGraths filed a post-trial motion for judgment *n.o.v.* on liability and a new trial on damages or, in the alternative, a new trial on all issues. In the motion for a new trial, the McGraths claimed that a mistrial should have been declared because of the problem with C&N's settlement question, and hence, a new trial should now be granted. On appeal, the McGraths rely on the claims that a mistrial should have been declared and that additional jury instructions should have been given as the bases for requesting this court to grant a new trial.

The McGraths' first issue on appeal is that they were deprived of a fair trial and are entitled to a new trial because the defense counsel asked a question about a settlement agreement between James McGrath and his daughter Kathleen. The McGraths contend that the introduction of this question should have resulted in mistrial.

■ A motion for a mistrial is a procedural tool designed to cut short a trial for legal reasons which preclude a verdict and judgment. (*Williams v. Deasel* (1974), 19 Ill. App. 3d 353, 355, 311 N.E.2d 414, 415.) This motion prevents parties from getting two chances at a verdict. (*Bauer v. Timucci* (1975), 33 Ill. App. 3d 1051, 1056, 339 N.E.2d 434, 438-39.) A motion for a mistrial, therefore, can only be made before the jury returns its verdict. (*Williams*, 19 Ill. App. 3d at 355, 311 N.E.2d at 415.) Thus, if the motion for a mistrial has not been made before the verdict, then the party asking for a new trial has waived the mistrial issue. *Bauer*, 33 Ill. App. 3d at 1057, 339 N.E.2d at 439.

In this case, the McGraths originally moved for a default when

C&N's counsel asked a question about the settlement between Kathleen and James McGrath. The trial judge interpreted this as a motion for mistrial and said he would reserve the motion. The McGraths did not press the judge for an immediate ruling on the mistrial motion; instead, they waited until after the jury verdict had been returned. At that time, the judge stated he would rule on the motion before entering the judgment. However, judgment was entered the following day, without any record of a ruling on the mistrial. Later, the McGraths filed a post-trial motion requesting a new trial, for among other reasons, because, they said, the court should have declared a mistrial after C&N's counsel asked the question about the settlement between the two plaintiffs.

■ We believe that the plaintiffs' conduct, first in failing to ask for a ruling at the time the judge first mentioned mistrial and then in failing to renew the motion before the jury verdict, constitutes a waiver of mistrial as a basis for a new trial. Therefore, we do not find any error in the trial court's decision denying plaintiff's request for a new trial on this basis.

■ Nevertheless, a reviewing court may find error even if the matter was not preserved by the lower court or opposing counsel if the prejudicial conduct of one attorney affects the conduct of a case so severely that the litigants cannot receive a fair trial. (*Manninger v. Chicago & Northwestern Transportation Co.* (1978), 64 Ill. App. 3d 719, 729, 381 N.E.2d 383, 391.) For example, if one party introduces "unreasonable and highly prejudicial" material in the closing argument, a reviewing court might consider this issue and reverse the decision regardless of whether the other side objected at the time. *Manninger*, 64 Ill. App. 3d at 729, 381 N.E.2d at 391.

■ Here, the McGraths argue that C&N introduced such highly prejudicial material into the trial with their settlement question that reversal is warranted. As a rule, Illinois courts bar questions about settlement during a trial on liability. (*De Lude v. Rimek* (1953), 351 Ill. App. 466, 473-74, 115 N.E.2d 561, 565.) The McGraths cite numerous cases on the point that public policy encourages settlement and protects it by excluding the use of settlement evidence as proof of liability. (See, *e.g.*, *De Lude*, 351 Ill. App. 3d 473-74, 115 N.E.2d at 565; *Pientka v. Board of Fire Commissioners of North Main Fire Protection District* (1984), 125 Ill. App. 3d 124, 131, 465 N.E.2d 677, 681.) However, evidence concerning a settlement is not automatically excluded if it tends to prove some other point, such as possible bias on the part of witnesses. See, *e.g.*, *Lam v. Lynch Machinery Division of Lynch Corp.* (1988), 178 Ill. App. 3d 229, 533 N.E.2d 37; *Kenny v.*

*Lakewood Engineering & Manufacturing Co.* (1979), 85 Ill. App. 3d 790, 796, 407 N.E.2d 551, 555-56.

When a party presents settlement evidence to prove a point like bias, the decision to include or exclude this evidence rests with the discretion of the trial judge. (*Batteast v. Wyeth Laboratories, Inc.* (1988), 172 Ill. App. 3d 114, 136-37, 526 N.E.2d 428, 443.) Furthermore, if a judge decides that evidence which has already been introduced to the jury should be excluded, the court can cure the error by instructing the jury to disregard the evidence. *Austin v. City of East Moline Board of Fire & Police Commissioners* (1972), 7 Ill. App. 3d 537, 543, 288 N.E.2d 113, 118.

In the case here, C&N called James McGrath as an adverse witness. During direct examination, C&N asked a single question about the $5,000 settlement which McGrath had made with his daughter Kathleen. The McGraths' counsel objected three times while the C&N counsel persisted to the end of the question. In chambers, C&N's counsel explained that the purpose of the question was to show bias by James McGrath, who could exaggerate his daughter's injury claims since he had already settled with her and forestalled any third-party claims C&N might make against him. The trial judge admonished C&N for not presenting the bias argument in chambers instead of simply exposing the settlement question to the jury in open court. Back in the courtroom, the judge then sustained the McGraths' objections and told the jury to disregard the question about settlement. The settlement topic did not come up again during the trial.

■ We find that the trial court properly exercised its discretion when it sustained the McGraths' objections to the C&N settlement question. The trial judge also cured any possible error by instructing the jury to ignore the question. We therefore conclude that, even if we were to consider this issue, there was no error.

The McGraths' second issue on appeal is that they were deprived of a fair trial and are entitled to a new trial because the trial court refused to give jury instructions based on sections 11—310 and 11—1303 of the Motor Vehicle Code. The plaintiffs requested these instructions to support their theory that C&N obstructed the road and failed to provide proper warnings. Without these instructions, the plaintiffs contend, the jury could not render a verdict on their theory of the case.

■ Parties have a right to have the jury instructed according to the law applicable to the facts of a case. (*Roberts v. City of Chicago* (1982), 105 Ill. App. 3d 383, 386, 434 N.E.2d 420, 422-23.) Among other things, courts may instruct juries about sections of the Motor

Vehicle Code that set the standard of care for certain negligence problems. (See, *e.g.*, *Amstar Corp. v. Aurora Fast Freight* (1986), 141 Ill. App. 3d 705, 709, 490 N.E.2d 1067, 1169-70.) The instructions proffered, however, must concern an issue that is supported by evidence; it is reversible error for a court to instruct a jury on law in the absence of evidence to which the law might apply. *In re Estate of Loesch* (1985), 134 Ill. App. 3d 766, 771, 481 N.E.2d 32, 36.

The Motor Vehicle Code regulates use of the public highways. Section 11—310 makes it a misdemeanor to display any "unauthorized sign, signal [or] marking" on any highway. (Ill. Rev. Stat. 1981, ch. 95½, par. 11—310.) Section 11—1303 provides that "[s]topping, standing or parking" is "prohibited in specified places." (Ill. Rev. Stat. 1981, ch. 95½, par. 11—1303.) Neither section specifies what class of persons it was enacted to benefit. The first division of this court, however has ruled that the purpose of section 11—1303 is to "facilitate the free and safe flow of vehicular *** traffic." *Sheehan v. Janesville Auto Transport* (1981), 102 Ill. App. 3d 507, 513, 430 N.E.2d 131, 134.

The trial record does not reflect any specific request for judicial notice of the two Motor Vehicle Code sections named in this appeal. At trial, the McGraths did present evidence that C&N had used cones and flares as signs, signals or markings to reroute traffic during the repair work. In addition, the McGraths proved C&N never got authorization from any government body specifically for the repair job on the Euclid Avenue gate. The McGraths also established that C&N blocked the eastbound side of Euclid Avenue with the repair truck while C&N workers repaired the train gate. The McGraths did not, however, present any evidence to link the Motor Vehicle Code sections cited with the conduct of C&N. The McGraths did not suggest that section 11—310 applied to signals erected during emergency repair work, or that section 11—1303 prohibited the blocking of a portion of a road while performing necessary repairs. Finally, they did not show that any particular authorized signs would have prevented the collision between James McGrath and Andrew Bartoli or that nonauthorized signs caused this accident.

At trial, the McGraths also asked the court to take judicial notice of some provisions from the Illinois Commerce Commission, the Manual on Uniform Traffic Control Devices, and section 11—1416 from chapter 95½ of the Illinois Revised Statutes, 1981. The trial judge also noted that none of those sections were tied to specific facts in this case either and, consequently, refused to take judicial notice of these materials as well.

At the close of the trial, the McGraths' counsel requested jury in-

structions based on only sections 11—310 and 11—1303. The judge refused to submit these instructions to the jury.

■ We find that the trial record does not show any specific request for judicial notice of sections 11—310 and 11—1303 of the Motor Vehicle Code or any evidence that relates the cause of the McGrath-Bartoli car collision to these Code provisions so that an instruction would be proper. For all of these reasons, we find that the trial court did not commit error, and accordingly, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

EGAN, P.J., and McNAMARA, J., concur.