S. ANTHONY GARCIA, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (5th Division) No. 1—90—2961

Opinion filed May 8, 1992.

316

Ambrose & Cushing, P.C., of Chicago (John C. Ambrose, of counsel), for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Brian Trubitt, Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Plaintiff S. Anthony Garcia brought suit against the City of Chicago (City) to recover for injuries he sustained in an automobile accident. The issues on appeal are: (1) whether the trial court erred in denying plaintiff's motion for a directed verdict on the issue of liability; (2) whether the jury's finding that plaintiff was 93.75% comparatively negligent was against the manifest weight of the evidence; (3) whether the trial court erred in instructing the jury that it could consider the impeachment of witnesses; (4) whether improper hearsay testimony denied plaintiff a fair trial; and (5) whether the trial court erred when it refused to give instructions informing the jury that it may not consider the negligence of a nonparty.

The evidence presented at trial established that at approximately 6:45 p.m. on August 15, 1983, plaintiff was traveling south on Halsted Street in Chicago. Walter Tanner was going west on Van Buren Street. Plaintiff testified that he slowed to a stop at the intersection behind another car. To his right, at the northwest corner, was a CTA bus. Plaintiff testified that because of the bus, his view of the traffic lights on the northwest and the southwest corners of the intersection was blocked. He testified that the traffic light on the southeast corner was not functioning, and that the northeast light was turned, displaying a green light for him. When the car in front of him began to move, plaintiff also moved. When plaintiff entered the intersection, his car was struck by Tanner's car. Plaintiff testified that Anthony Kiselus, the police officer who investigated the accident, told him that there had been a similar accident at that same intersection about a week earlier where the traffic light had been twisted toward the wrong direction.

Tanner testified that he took a photograph of the intersection between 7:15 and 8 p.m. the day of the accident. This photograph, admitted into evidence, showed that the light on the southeast corner was burned out, and the light on the northeast corner was twisted on its pole so that it showed green for southbound traffic at the same time the light on the northwest corner showed red for the southbound traffic. James Ryan also testified on behalf of plaintiff that the light

for southbound traffic at that intersection had been out two days before this accident.

The City called Officer Kiselus, who denied telling plaintiff that there had been an accident approximately a week earlier involving the twisted traffic light on the northeast corner of the intersection. He testified that the light on the northeast corner that was meant to direct traffic going from west to east was turned facing north, but all other lights at the intersection were functioning properly. He disputed that the photograph was taken at the time of the accident because it showed that the southeast light was not operating and because the picture appeared to have been taken at daylight. Officer Kiselus also testified that he was on the accident scene from 6:54 p.m. until he completed his report at 7:22 p.m. and during that time he did not see anyone taking pictures of the scene, nor was he aware that anyone at the accident scene had a camera.

Bernard O'Hallaren of the City's bureau of electricity testified that he searched the bureau's records for the four months preceding the accident for reports of malfunctioning traffic lights at the corner of Halsted Street and Van Buren Street. He found a report from May 23, 1983, indicating that a bulb in one of the traffic lights was burned out and was replaced, and a report from August 16, 1983, indicating that the northeast traffic light was turned, and soon thereafter was straightened and secured by a City technician. The court ruled that the log sheets provided by O'Hallaren could not be admitted as business records because they were photocopies rather than originals, and because the slips of paper from which the log sheets were generated had not been accounted for. Plaintiff moved to strike O'Hallaren's testimony. The court reserved ruling on this matter, and the record is unclear as to whether the court did indeed rule on this motion.

The City also presented the testimony of Terese Joyce, who testified that she searched the records of the traffic and engineering department for reports of accidents that had occurred at the corner of Halsted and Van Buren Streets during 1983. She found reports of 11 accidents other than the accident at issue in this case. The trial court ruled that Joyce's testimony was hearsay and instructed the jury to disregard her testimony.

The jury returned a verdict against the City. Plaintiff's damages were found to be $19,100, but the jury reduced the award 93.75% for plaintiff's comparative negligence to a total of $1,193.75. Plaintiff appeals.

■ Plaintiff first contends on appeal that the trial court erred in denying his motion for a directed verdict on the issue of plaintiff's

contributory negligence. A verdict is to be directed when all of the evidence, viewed in the aspect most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) A directed verdict is inappropriate where there are factual issues to be determined by the jury, or where the assessment of the credibility of witnesses or determination regarding conflicting evidence may be decisive to the outcome of a case. (*Anderson v. Beers* (1979), 74 Ill. App. 3d 619, 393 N.E.2d 552.) In order to prove contributory negligence, it must be shown that a party failed to do that which a reasonably careful person would do or has done something that a reasonably careful person would not do. (*Mort v. Walter* (1983), 98 Ill. 2d 391, 457 N.E.2d 18.) Whether certain conduct constitutes negligence is a matter best left to the determination of the jury. *Moore v. Swoboda* (1991), 213 Ill. App. 3d 217, 571 N.E.2d 1056.

The undisputed evidence reveals that Tanner, driving westbound, had a green light as he entered the intersection. It is also undisputed that the light on the northeast corner of the intersection, which was meant to control eastbound traffic, was turned so that it instead faced southbound traffic. However, we are faced with conflicting testimony as to whether the light on the southeast corner, meant to control southbound traffic, was burned out. Although plaintiff claims that the light was burned out, the investigating officer testified that the light was operating properly. Moreover, while plaintiff introduced a photograph allegedly taken shortly after the accident, Officer Kiselus' testimony casts doubt on whether the photograph was indeed taken on the night of the accident. Plaintiff contends that because of a bus stopped at the northwest corner, his view of the traffic lights on the northwest and southwest corners of the intersection was blocked. Thus, according to his testimony, he proceeded into the intersection after seeing the twisted traffic light turn green. Whether the traffic light on the southeast corner was burned out and whether plaintiff acted reasonably by entering the intersection after seeing the twisted light turn green are questions that were properly left to the jury to answer. Accordingly, we find that there was sufficient evidence to send this case to the jury on the issue of plaintiff's contributory negligence.

In the alternative, plaintiff contends that the jury's verdict finding plaintiff 93.75% comparatively negligent was against the manifest weight of the evidence. However, it is our opinion that there was sufficient evidence to support the jury's verdict. Credibility determinations are uniquely within the province of the jury, and an appellate

court may not disturb a credibility determination unless the jury has acted contrary to the manifest weight of the evidence. (*Long v. Illinois Power Co.* (1989), 187 Ill. App. 3d 614, 543 N.E.2d 525.) From the evidence presented at trial, the jury may have concluded that the light at the southeast corner of the intersection was operating properly at the time of the collision. Furthermore, regardless of whether or not the light at the southeast corner was functioning properly, the jury may have concluded that a reasonable man would have noticed that the twisted light was not in its normal position and should not be followed, or at the least followed with caution. Therefore, there was sufficient evidence to support the jury's determination that plaintiff was 93.75% responsible for the accident.

■ We also find no merit in plaintiff's contention that the trial court erred in instructing the jury on impeachment by prior inconsistent statements. In order to impeach a witness with a prior inconsistent statement, the impeachment must be completed by later offering evidence of the inconsistent statement if the statement was denied. (*Rigor v. Howard Liquors, Inc.* (1973), 10 Ill. App. 3d 1004, 295 N.E.2d 491.) It is reversible error to fail to offer substantive proof of the impeaching statements due to the highly prejudicial innuendo created through the incomplete impeachment. (*Green v. Cook County Hospital* (1987), 156 Ill. App. 3d 826, 519 N.E.2d 3.) Here, when defense counsel read contradictory answers from plaintiff's deposition transcript, plaintiff claimed that he was unable to recall making all but one of the statements. Plaintiff therefore argues that the impeachments were incomplete because it was not proved that he made the prior statements. We disagree. It is clear from the record that plaintiff admitted that he had been deposed and that he had been sworn prior to giving the deposition. In fact, plaintiff even stipulated that the deposition transcripts read to the jury were accurate. Accordingly, the authenticity of the deposition transcripts has been established, and the trial court properly instructed the jury that it may consider these impeaching statements.

■ Plaintiff's next contention is that he was denied a fair trial by O'Hallaren's and Joyce's testimonies as to reports of malfunctioning lights at the intersection of Halsted and Van Buren Streets. Plaintiff moved to strike O'Hallaren's testimony, but ruling on the motion was reserved. It does not appear from the record that plaintiff renewed his request to strike O'Hallaren's testimony or that the trial court in fact ruled on the motion. Plaintiff has therefore waived the right to challenge the propriety of O'Hallaren's testimony. It is clear from the record, however, that the trial court did strike Joyce's testimony. The

trial court not only orally instructed the jury to disregard Joyce's testimony, but also gave the jury a written instruction that it was not to consider testimony that was stricken. Sustaining an objection and instructing the jury to disregard the stricken testimony cures any potential prejudice (*McGrath v. Chicago & North Western Transportation Co.* (1989), 190 Ill. App. 3d 276, 546 N.E.2d 670), and absent clear evidence to the contrary, it is presumed that the jury followed the instruction. (*Wells v. Webb Machinery Co.* (1974), 20 Ill. App. 3d 545, 315 N.E.2d 301.) Based on our review of the record, we conclude that the trial court's instructions to the jury were adequate to cure any prejudice to the defendant on this point.

■ Plaintiff's last contention is that the trial court erred when it refused to instruct the jury that if it finds defendant negligent, it is not a defense that a nonparty may have contributed to the injury. No party may raise as grounds for an appeal the failure to give an instruction that the party did not proffer to the trial court in a timely manner. (107 Ill. 2d R. 366(b)(2)(i).) Here, plaintiff not only failed to tender these instructions, but he in fact argued against the instructions when they were presented to the trial court by Tanner.

Accordingly, for the reasons set forth above, the decision of the trial court is affirmed.

Affirmed.

LORENZ and GORDON, JJ., concur.