Sandra TORRES, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 96 C 1968.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 28, 1997.

---

Roger N. Gold, I. Peter Polansky, Tricia Bellich, Gold & Polansky, Chtd., Chicago, IL, for Plaintiff.

Kathryn Ann Kelly, Joan Laser, U.S. Attorney's Office, Chicago, IL, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALESIA, District Judge.

On February 19, 1996, the court held a bench trial on plaintiff Sandra Torres' personal injury cause of action against defendant United States of America. The case is before the court under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80.

The court, based upon the credible evidence of record, makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52:

## I. FINDINGS OF FACT

### A. Facts

***Condition of the post office stairs***

1. Defendant United States of America ("the government") operates a post office in Streator, Illinois.

2. Post office patrons may enter and exit the post office from either the Hickory Street side or the Monroe Street side.

3. Post office employees routinely maintained and inspected the post office premises, including the stairs on the Monroe Street side.

4. Post office employee John Kovatch ("Kovatch") is responsible for custodial and maintenance work inside and outside of the post office. Kovatch has been in his position since 1981.

5. At certain times of the day each day, Kovatch walks around the building and examines the stairs to see if any debris is on the stairs. He also occasionally is required to fix the stairs.

6. In 1991, Kovatch was instructed by the postmaster to replace signs attached to the front of the top step of the post office stairs.

7. The top step of the Monroe Street stairs once had held another sign, which had been removed sometime before 1991. There were nail holes in the top step as well as some remaining nails that had held the old sign.

8. Kovatch placed the new sign immediately adjacent to where the old sign had been.

9. Kovatch saw the nails and nail holes where the old sign had been fixed to the top step, but he did not bother to remove the nails. He was of the opinion that the nails did not seem to be a problem and that if the nails were removed, the concrete might have to be replaced. Kovatch left the nails from the old sign in place.

10. It is unclear whether the nails that Kovatch left in place were sticking straight out or were bent, and how far they protruded from the step, at the time Kovatch installed the new sign in 1991.

11. According to Kovatch, an inspector conducted yearly safety inspections of the post office, including the outside stairs. To Kovatch's knowledge, the inspector never cited the post office for a safety violation. The government did not call a post office safety inspector to testify at trial.

***Plaintiff's accident***

12. On May 6, 1994, in the late afternoon, plaintiff Sandra Torres ("Torres") visited the Streator post office.

13. At the time Torres went to the post office, the weather was sunny and dry.

14. Torres was wearing low-heeled loafers.

15. Torres entered the post office on the Hickory Street side.

16. Torres exited the post office on the Monroe Street side.

17. As Torres exited the post office, she was holding her purse, a small package, and two or three letters.

18. When Torres reached the stairs, she descended the south portion of the stairs.

19. Torres began stepping down from the top step of the stairs, which is the step that holds the sign installed by Kovatch in 1991 and which held the old sign that had been removed prior to 1991. The nails that had affixed the old sign to the step still were in the top step.

20. Torres' right heel caught something as she stepped down from the top step.

21. Torres tried to regain her balance by grabbing for the rail, but she was unable to do so and fell down the flight of stairs, landing at the bottom.

22. Pam Neal ("Neal"), an eyewitness to Torres' accident, was walking up the stairs as Torres was beginning to walk down the stairs. Neal was almost even with Torres, but slightly to the right of her.

23. Neal saw Torres' left ankle turn, saw a surprised look on Torres' face, and saw Torres drop her things and try to lunge for the rail to stop her fall, which Torres was unable to do. Neal did not know if Torres' shoe caught on a nail on the stairs, but she saw her as her left foot turned and she started to fall.

24. Neal tried to catch Torres, but could not, and Torres fell down the stairs.

25. Torres landed on her hands and knees, and her mouth hit the railing at the bottom of the stairs.

26. Torres was dazed but did not lose consciousness, and was unable to get up.

27. Immediately after Torres fell, people came to her assistance and called an ambulance, which took Torres to St. Mary's Hospital.

### Cause of plaintiff's fall

28. Torres felt her right heel catch something as she stepped down from the top of the stairs.

29. Torres claims that after she fell to the bottom of the stairs, she rolled over and looked up at the stairs to see what made her fall, and saw a nail about an inch long sticking straight up out of the first step at the top of the stairs.

30. It seemed to Neal that Torres' left ankle turned because of a misstep by Torres.

31. Neal did not see any nails protruding from the top step. However, it is undisputed that the old nails were in the step on the day of the accident.

32. Neal went to the Streator post office once or twice per month prior to Torres' accident, and never saw any nails protruding from the stairs. However, it is undisputed that the old nails were in the top step during those times and on the day of the accident.

33. On the day of her accident, Torres did not go to the top of the stairs to look at the nail more closely.

34. Kevin Christiansen, who was supervisor of customer service at the Streator post office at the time of Torres' accident, was working at the post office on the afternoon of Torres' accident.

35. Immediately after Torres fell, Christiansen was told that someone had fallen on the stairs. He went outside and heard Torres groan but did not hear her say anything. He called an ambulance for Torres.

36. After Torres was taken to the hospital, Christiansen cleaned her blood off the stairs, and glanced at the stairs to see what could have caused Torres' fall. He did not see anything.

37. A few weeks after her accident, Torres filed a claim with the post office. The claim stated that there was a metal protrusion on the steps. After he received notice of her claim, Christiansen again inspected the stairs, but could not find the metal protrusion.

38. Four or five days after she fell, Torres went back to look at the nail, and saw that it was bent over.

39. Kovatch testified that he did not bend over the nail on the day of Torres' accident or on any other day either before or after the accident, knows of no person that bent over the nail, and does not know when the nail was bent over.

40. Christiansen testified that he never instructed any postal employee to hammer the nail down after Torres' accident and never saw any order, which would have had to go through him, for a postal employee to hammer the nail down. However, he did not interview post office employees to see if anyone hammered the nail down. Christiansen testified that in addition to Kovatch, another janitor worked two hours per day at the post office, primarily emptying trash and getting change from the bank. The government did not call the second janitor to testify at trial.

41. About two years after Torres' accident, Kovatch, Christiansen, and an Assistant United States Attorney examined the stairs where Torres fell.

42. They saw the nail in the top step; the nail was bent over.

43. Kovatch measured the nail to determine how far from the step it protruded. As of two years after Torres' accident, the nail protruded about three-sixteenths of an inch from the step.

44. After Kovatch measured the nail, he still left it in place.

45. Neither Kovatch nor Christiansen was able to say how far the nail protruded on the day of Torres' accident.

46. The court finds that the government breached its duty to Torres of reasonable care regarding the state of its premises. The government had actual knowledge of the nails protruding from the top step of the south side of the Monroe Street stairs at the Streator post office for at least three years prior to this accident. Yet, the government failed to remove the nails for the reason that it would have been difficult or costly to do so. Thus, the government allowed a dangerous condition to exist on its premises.

47. The court finds that Torres has established that the government's negligence in failing to remove the protruding nails was the proximate cause of her injuries, pain, discomfort, and damages, in that she has established that she caught her shoe heel on a nail, which protruded from the step at least three-sixteenths of an inch, and which caused her to fall down the stairs.

### Plaintiff's contributory negligence

48. As she descended the stairs, Torres was looking at her mail.

49. Torres saw the nail protruding from the step prior to the day of her accident, but never told anyone.

50. A reasonably careful person would not look at mail while descending stairs, and would avoid a potentially dangerous condition that she knew to exist on the stairs.

51. Because Torres did not do that which a reasonably careful person would do, and did that which a reasonably careful person would not do, she contributed to her injury by her own negligence.

52. Torres' negligence was 25 percent of the total proximate cause of her injury.

### Plaintiff's injuries

53. Immediately after her accident, and for some time subsequent to the trauma, Torres suffered from pain in her knees, chest, ribs, and mouth.

54. As a direct result of the fall and the government's negligence, Torres received stitches in her lip, and had four loose teeth. One tooth has been removed, and one tooth has fallen out. Two teeth are still loose and need to be removed, but Torres has not had them removed because she cannot afford it.

55. Torres also received fractures to her left fifth and sixth ribs as a direct result of the fall and the government's negligence.

56. Torres sustained a fractured right patella as a direct result of the fall and the government's negligence.

57. On May 27, 1994, Torres' doctor prescribed physical therapy for her knee. Torres began the physical therapy on June 22, 1994, and ended her physical therapy in August 1994.

58. Torres must go up and down stairs for her job. Her knee swells up and causes her pain. For the pain, Torres takes aspirin two to three times per day and applies analgesic creams to her knee.

59. Torres cannot bite down and chew with her two front teeth, which are still loose.

60. Torres never had an injury to her right patella, ribs, or mouth before or after her May 6, 1994, accident.

61. Torres, who was not employed at the time of her accident, incurred medical expenses in the amount of $4,013.98. The government did not dispute the special damages.

## B. Witnesses

### Plaintiff's witnesses

1. **Sandra Torres** testified on her own behalf regarding her accident and consequent injuries.

2. **John Kovatch,** the Streator post office employee responsible for maintenance of the post office, testified as to the condition of the stairs where Torres' accident occurred.

### Defendant's witnesses

3. **Kevin Christiansen,** supervisor of customer service at the Streator post office at the time of Torres' accident, testified as to the condition of the stairs where Torres' accident occurred.

4. **Pam Neal,** who witnessed Torres' accident, testified regarding Torres' accident.

## C. Credibility Findings

1. The court had the unique opportunity to observe the plaintiff's demeanor during her testimony. **Sandra Torres** was a credible witness. She testified clearly and unequivocally about her accident and injuries. However, the court finds that one portion of her testimony may not be entirely credible.

Torres testified that after she fell, as she was lying at the base of the stairs, she looked up at the stairs to see what caused her to fall; and at the top of the first step, she saw a nail sticking straight out about one inch. From the bottom of the stairs, Torres may not have been in a position to see the nail or accurately estimate its length. However, she had seen the nail prior to the accident and knew the place to look for it. In addition, there is no dispute that the old nails were protruding from the step at the time of the accident.

2. **John Kovatch** was not a credible witness with respect to the key factual issues in dispute in this case, in that he could not testify as to the condition of the top step on the day of Torres' accident. However, Kovatch admitted that he never removed the nails from the step. The court also notes that Kovatch attempted to testify as an expert as to whether a shoe heel could get caught on the nail that was protruding three-sixteenths of an inch from the top step two years after the accident. The government neither designated nor qualified Kovatch as an expert witness. Thus, the court wholly disregarded this aspect of his testimony as speculative and conjectural.

Aside from his attempt to testify as an expert, Kovatch testified essentially that he did not bother to remove the nails from the top step in 1991, and did not notice the nails or their condition after that time until two years after Torres' accident. Thus, his testimony was not particularly informative, except as to the fact that nails protruded a minimum of three-sixteenths of an inch from the top step two years after Torres' accident, and that he, and therefore the government, knew of the nails since at least 1991 and allowed this hazardous step to remain in a condition of disrepair.

3. **Kevin Christiansen** was not a credible witness with respect to the key factual issues in this case, in that he could not testify as to the condition of the top step on the day of Torres' accident. Also, like Kovatch, Christiansen attempted to testify as an expert as to whether a shoe heel could get caught on the nail that was protruding three-sixteenths of an inch from the top step two years after Torres' accident. The government neither designated nor established Christiansen as an expert witness. Thus, the court wholly disregarded this aspect of his testimony as speculative and conjectural.

In addition, aside from his attempt to testify as an expert, Christiansen testified essentially that he did not see any nail in the stairs until two years after Torres' accident, and that he never ordered anyone to hammer down protruding nails in the stairs. Thus, his testimony was not particularly informative. Moreover, his testimony is inconsistent with Kovatch's testimony that nails were protruding from the top step since 1991.

4. **Pam Neal** was a fairly credible witness in some respects, but her testimony was equivocal in certain respects.

Though varying from Torres' testimony, Neal's testimony did not foreclose the likelihood that Torres' right heel caught on the nail on the top step. Neal testified that what attracted her attention to Torres was seeing Torres' left ankle twisting, and that the cause of Torres' ankle twisting seemed to be a misstep. But Neal did not testify as to whether Torres' right heel caught on something, which caused Torres to misstep with her left foot, which caused Torres' left ankle to twist. Therefore, Neal's testimony did not unequivocally establish that Torres' testimony was not credible as to the proximate cause of her accident.

Moreover, Torres suffered no injury to her left ankle. If Torres had twisted her left ankle so seriously that it caused her to fall down a flight of stairs, Torres likely would have had some injury to her ankle.

Thus, though Neal appeared to testify truthfully, her testimony did not necessarily explain what precipitated Torres' fall or contradict Torres' testimony as to the proximate cause of her fall.

### D. *Summary*

The government had a duty to use reasonable care in maintaining its premises. The government breached that duty by allowing its premises, specifically the top step of the Monroe Street outside stairs, to remain in a hazardous condition even after it had actual notice of that hazardous condition. The government's negligence proximately caused Torres' accident, injuries, pain, discomfort, and damages.

### II. *CONCLUSIONS OF LAW*

1. This court has subject matter jurisdiction of this cause of action. 28 U.S.C. §§ 1346, 2671–80.

2. The law of the state where the alleged misconduct occurred generally governs the nature and extent of damages. *Richards v. United States,* 369 U.S. 1, 11–12, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1962); 28 U.S.C. § 1346(b). The law of the state of Illinois applies.

3. In order for defendant to be found liable, plaintiff must prove all elements of a negligence claim: duty, breach of duty, proximate cause, and damages. *Hayes v. Bailey,* 80 Ill.App.3d 1027, 1030, 36 Ill.Dec. 124, 126, 400 N.E.2d 544, 546 (3rd Dist.1980).

4. The duty defendant owed plaintiff was reasonable care under the circumstances regarding the state of the premises. 740 ILCS 130/2; *Hayes,* 80 Ill.App.3d at 1030, 36 Ill.Dec. at 126, 400 N.E.2d at 546.

5. Plaintiff is entitled to recover only if her claimed injuries resulted proximately from the cause complained of in the complaint. *See Wise v. St. Mary's Hosp.,* 64 Ill.App.3d 587, 589, 21 Ill.Dec. 482, 484, 381 N.E.2d 809, 811 (5th Dist.1978).

6. Plaintiff must prove that defendant's negligence, more probably than not, proximately caused plaintiff's injury. *Newell v. Corres,* 125 Ill.App.3d 1087, 1092, 81 Ill. Dec. 283, 286, 466 N.E.2d 1085, 1088 (1st Dist.1984).

7. Proximate cause is that cause that, in natural or probable sequence, produced the injury complained of in the complaint. *See Hajian v. Holy Family Hosp.,* 273 Ill.App.3d 932, 940, 210 Ill.Dec. 156, 162, 652 N.E.2d 1132, 1138 (1st Dist.1995). However, proximate cause is not established where the causal connection is " 'contingent, speculative or merely possible.' " *Newell,* 81 Ill.Dec. at 286, 466 N.E.2d at 1088 (quotation omitted).

8. In the case of an alleged defective condition on defendant's property, defendant must have had actual or constructive knowledge of the alleged defective condition. *Tracy v. Village of Lombard,* 116 Ill.App.3d 563, 572, 71 Ill.Dec. 838, 844–45, 451 N.E.2d 992, 998–99 (2d Dist.1983); *Gilberg v. Toys "R" Us, Inc.,* 126 Ill.App.3d 554, 557–58, 81 Ill. Dec. 825, 827, 467 N.E.2d 947, 949 (1st Dist. 1984).

9. In order to prove contributory negligence on the part of plaintiff, defendant must show that plaintiff failed to do that which a reasonably careful person would do,

or has done that which a reasonably careful person would not do. *Garcia v. City of Chicago*, 229 Ill.App.3d 315, 319, 171 Ill.Dec. 35, 37–38, 593 N.E.2d 855, 857–58 (1st Dist. 1992).

10. Under a comparative negligence standard, which Illinois follows, if plaintiff's negligence was 50 percent or less of the total proximate cause of her injury, plaintiff is allowed to recover the proportion of damages not attributable to her own fault. That is, the trier of fact reduces plaintiff's damages by the percentage of fault attributable to plaintiff. *Boasiako v. Checker Taxi Co.*, 140 Ill.App.3d 210, 213, 94 Ill.Dec. 673, 675, 488 N.E.2d 672, 674 (1st Dist.1986); 735 ILCS 5/2–1116.

## III. *DECISION*

Pursuant to Federal Rules of Civil Procedure 52 and 58, the court enters judgment in favor of plaintiff, Sandra Torres, and against defendant, United States of America, in the amount of $40,000, reduced by 25 percent because of plaintiff's contributory negligence, for a total judgment in the amount of $30,-000, plus costs.