JAMESETTE ROSS, Plaintiff-Appellee, v. ARYAN INTERNATIONAL, INC., Defendant-Appellant (Ace Acoustics, Inc., Defendant-Appellee).

First District (6th Division) No. 1—91—0644

Opinion filed August 30, 1991.—Rehearing denied October 22, 1991.—Modified opinion filed October 25, 1991.

Coleman & O'Halloran, Ltd., of Chicago (John M. Coleman, of counsel), for appellant.

Marvin W. Gray, of Chicago, for appellee Jamesette Ross.

Querrey & Harrow, Ltd., of Chicago (Michael Resis, of counsel), for appellee Ace Acoustics, Inc.

JUSTICE LaPORTA delivered the opinion of the court:

Plaintiff Jamesette Ross sued for damages after she fell at a construction site where she worked in the main United States Post Office in downtown Chicago. Plaintiff sued the general contractor and two of his subcontractors involved in the construction project. The trial court directed a verdict in favor of one subcontractor, Richard L. Dobbins and Company, Inc., at the conclusion of the evidence. The jury returned a verdict in favor of plaintiff but filled out a verdict form finding against Aryan International, Inc., only and was silent as to Ace Acoustics, Inc. Aryan moved for a mistrial. The court denied the motion and entered a judgment for plaintiff and against Aryan and a finding in favor of Ace Acoustics. Aryan appealed, alleging numerous errors by the trial court and identifying 11 issues for review.

Defendant raises these issues on appeal: (1) whether the trial court should have granted defendant's motion for mistrial following plaintiff's reference during *voir dire* to construction industry insurance, in violation of an order *in limine*; (2) whether the trial court should have granted defendant's motion for mistrial following reference by plaintiff's counsel during his opening statement to an inadmissible contract provision; (3) whether the testimony of plaintiff's treating physician should have been stricken for failure to render an opinion based on a reasonable degree of medical certainty about the causal connection between plaintiff's fall and her injury; (4) whether the trial court should have granted defendant's motion for a directed verdict at the conclusion of plaintiff's case and the conclusion of all the evidence; (5) whether the plaintiff has the actual burden of proving that a general contractor had actual or constructive knowledge of a dangerous condition at a construction site; (6) whether the jury verdict was against the manifest weight of the evidence; (7) whether plaintiff's instructions and verdict form to the jury regarding future

pain and suffering were proper; (8) whether the trial court ruled correctly in dismissing the defendant's subcontractor during the course of trial; (9) whether the trial court should have submitted defendant's special interrogatory to the jury for determination; (10) whether the trial court ruled correctly that a verdict form returned by the jury naming only one of the two defendants constituted a finding of no liability as to the nonnamed party; and (11) whether prejudicial remarks by plaintiff's counsel during closing arguments, when combined with other comments, had the cumulative effect of depriving defendant of a fair trial.

The following facts were adduced at trial. Plaintiff Jamesette Ross was injured in August of 1985 when she tripped and fell in the hallway of the main United States Post Office in Chicago, where renovation work was underway in the fourth-floor cafeteria. Plaintiff filed suit against the general contractor on the project, Aryan International, Inc., and against two subcontractors, Ace Acoustics, Inc., and Richard L. Dobbins and Company, Inc. Plaintiff alleged she tripped over a metal stud (also called a piece of metal, railing, metal object and/or metal beam in testimony) that had become partially disengaged from the dust barrier which was installed to isolate the construction site from the employees' work areas. She alleged the three defendants owed her a duty to erect and maintain the dust barrier in such a condition so as not to proximately cause injury to her or other employees. Aryan filed cross-claims for contribution against both Ace and Dobbins.

Prior to *voir dire*, the court granted Aryan's motion *in limine* to bar plaintiff from mentioning at any time the existence of insurance coverage for defendants "or any potential juror's exposure to recent publicity concerning problems in the insurance industry." Plaintiff's counsel asked the first potential juror whether he ever had anything to do with the insurance aspect of his job before he retired from his position managing construction loans and commercial assets at First Federal of Chicago bank. Aryan's counsel objected and moved for a mistrial which was denied. The trial court instructed the jury to disregard the question.

During opening statements, plaintiff's attorney read verbatim from a portion of the contract between defendant Aryan and the United States Post Office which contained a clause wherein Aryan agreed to hold the postal service harmless for personal injury claims brought as a result of defendant Aryan's negligence or the negligence of his employees, subcontractors or the subcontractor's employees. Aryan objected and moved for a mistrial, contending that the reading

indicated to the jury that Aryan was fully responsible for any negligence, even if caused by its subcontractors. The trial court denied the motion for a mistrial but cautioned the jury to ignore the reading of the clause because this was a question of law, not fact, that the court would decide.

Plaintiff's first witness was William Herrero, the president of Ace Acoustics, who testified as an adverse witness. Herrero testified that his company was hired to install the dust barrier and did so during a six-day period between July 25 and August 14, 1985. The dust barrier was constructed to specification provided by the postal service and consisted of metal studs at the floor and ceiling that secured a panel of visqueen, a thick plastic sheeting, which separated the construction area from the work areas of the postal workers. Herrero admitted that his inspection of the barrier was simply visual and that he never physically checked to see if the top and bottom were sealed and secured so they would not move. He testified that he was not responsible for and did not inspect the barrier after it was installed.

Defendant Richard L. Dobbins, president of Richard L. Dobbins and Company, Inc., testified as an adverse witness, stating that his company was hired to do the demolition work on the cafeteria project. He testified that there were no cautionary signs posted around the work area. Dobbins was recalled at the close of plaintiff's case to testify that after the accident his son, Vincent Dobbins, called him and said that a woman had fallen in the post office, and that she had tripped over a piece of metal that was sticking out into the corridor.

Baldev Verma, president of Aryan International, Inc., the general contractor, was called by plaintiff as an adverse witness. He stated that his company hired Ace Acoustics to install the dust barrier and that its president, Herrero, inspected the barrier two days before the accident. Verma testified that he learned of the accident via a telephone conversation with one of his construction superintendents. Verma admitted, after being impeached, that the superintendent told him over the phone that he himself saw the railing "sticking out" into the corridor.

The United States Post Office's project manager for the construction site, Lance Christensen, testified that he found the completed dust barrier met government specifications. He stated that the specifications only required that a dust barrier be installed and did not state what material was to be used or how it was to be installed. Christensen testified that he inspected work done by Aryan but that Verma did not always take corrective action when something wrong was pointed out to him.

Victor K. Dobbins testified that he was employed by Dobbins' construction company on the date of the accident and witnessed plaintiff's fall from approximately 10 feet away. He testified that he saw her walk down the hallway at a fast pace, turn the corner sharply and bump into the the edge of the dust barrier. He testified that a metal stud was protruding onto the floor six to eight inches from the dust barrier wall and it was in a U-shape, four inches across and two inches high. He testified that after plaintiff fell, he went to the scene and tried to push the metal stud "back out of the way so nobody else would trip over it."

Vincent Dobbins testified that he worked for his father's company, Richard L. Dobbins and Company, Inc., at the time of plaintiff's accident and witnessed the accident. He denied giving or signing a statement prepared by the post office investigator. He testified that plaintiff "brushed against the retaining wall and she fell." Vincent Dobbins testified that Victor Dobbins remained at his side and did not go over to see plaintiff or try to push anything out of the way. He testified that: "I didn't see nothing that she tripped over."

Georgia Cornelius testified that she was exiting the ladies room when she heard a noise and looked over and discovered that plaintiff had fallen. She testified that she went to aid plaintiff and found a piece of metal beside plaintiff, the type of metal used in construction. She testified that one end of it appeared to be secured to the barrier and the other was loose.

Frieda Young-Neal testified that she went to the scene of the accident across from the library where she worked after she heard a scream. She testified that she saw a metal object beside plaintiff as she lay on the floor. The object was lying loose, not attached to anything.

Gwendolyn White, the head nurse at the post office, testified that she attended to plaintiff at the scene of her accident. She testified that she kicked a grey metal beam away from plaintiff's side before she helped plaintiff. She testified that the beam was not attached to anything.

Plaintiff's physician, Carlton A. West, testified that plaintiff had a displaced fracture of a bone in her elbow and required corrective surgery twice. She suffered from great pain. He testified that about a year after the accident she was "fairly functional" but her mobility had "plateaued" and she would never be able to achieve the full range of motion. He stated that she was able to carry out most of her daily activities and that shortly thereafter he approved her return to work. He testified that fractures in a joint always cause some degree of de-

generative arthritis that would be irreversible. He discovered with later exams of plaintiff's elbow that she was suffering from ulna nerve neuropathy, manifesting itself through a numbness in the fourth and fifth fingers of the left hand.

During West's testimony, Aryan International, Inc., obtained an order *in limine*, barring West from giving an opinion about plaintiff's future care, treatment or prognosis. West testified, however, without defense objection, "[t]hat for the most part the symptoms that she was experiencing then, she could expect to experience those symptoms in the future indefinitely and that I didn't expect any spontaneous improvement in the amount of pain that she was having in her elbow and the parasthesis and weakness in her fingers and hand."

Plaintiff testified that in her job as a clerk she lifted and transported boxes, letters and packages of registered mail around the post office three times a day. She testified that she had previously been in good health and missed work only four or five days annually.

Plaintiff testified that she was on her way to the cafeteria to warm up her lunch in the microwave on August 16, 1985, when the accident occurred. She testified that she had not been on the fourth floor at all earlier in the year and that once she arrived, she saw no signs warning her of the construction or the existence of a dust barrier. She testified that, as she turned a corner to go toward the cafeteria, she felt her foot make contact with something steel. She did not see what her foot hit. She testified that when she fell, her elbow embedded into the u-shaped metal beam on the floor and that the first aid people removed it when they arrived. She testified that after her fall she saw that the metal beam extended into the hallway six or seven inches.

She testified that she worked four or five months longer after returning to work following her accident but then decided to call in sick, using up her accumulated sick time, and then to retire.

Plaintiff testified that the injury left her unable to perform many functions in her personal life such as buttoning and zipping up dresses, lifting heavy cooking pots, putting up an ironing board and, to a certain extent, driving.

All parties stipulated to the $16,086.62 in medical expenses incurred. At the close of plaintiff's case, the court denied Aryan's motion to strike West's testimony. Aryan contended the testimony should have been stricken because West never rendered an opinion, based on a reasonable degree of medical certainty, that plaintiff's injury was causally connected to the August 16, 1985, accident at the post office.

Following the close of plaintiff's case, all defendants moved for a directed verdict. The court granted Dobbins' motion. The remaining defendants, Aryan and Ace, presented no evidence.

The parties tendered proposed jury instructions, and three instructions offered by Aryan were refused by the trial court. The first, No. 13, was a special interrogatory which asked "Whether the metal stud was disengaged from the dust barrier for a long enough time to permit Aryan International, Inc., to discover the defect if it performed its duty with reasonable care." The second and third, Nos. 19 and 20, were verdict forms which excluded damages for future pain and suffering.

During closing arguments, plaintiff's attorney commented: "We have a loose dust barrier in a hallway well traveled by postal workers every day, especially during lunch periods, sitting right there. I don't know, it could be the case, but I wouldn't be surprised if this were only one in a series of suits against these parties. Who knows." Aryan's counsel objected, and the judge granted Aryan's request that the comment be stricken. The jury was instructed to disregard the comment.

After the jury deliberated, it returned a verdict in favor of plaintiff and against Aryan International, Inc., for $419,395.84. Ace Acoustics was not mentioned in the verdict. The jury was polled as to its verdict and then released. The trial judge subsequently denied a motion for mistrial by Aryan, which contended that the jury's verdict was a nullity because there was no clear indication of its intention as to the liability or nonliability of Ace Acoustics. Aryan appealed after the trial judge denied its post-trial motion to set aside the verdict, for judgment notwithstanding the verdict, for a new trial, or, in the alternative, for a remittitur.

Aryan presented as its first issue on appeal, whether the trial court should have granted defendant's motion for mistrial following plaintiff's reference to construction industry insurance, in violation of an order *in limine*. Aryan contends the trial court should have granted its motion for mistrial made during jury selection. Aryan argues that plaintiff's counsel made an improper inquiry to juror James Fitzmaurice when he was asked whether he "ever had anything to do with the insurance aspect" of his former job. After counsel for Aryan objected and asked for a mistrial, the judge informed the lawyers that he would give "a brief cautionary statement that the last question should be totally disregarded." The record does not reflect what cautionary statement was given.

■ Generally, evidence informing a jury that a defendant in a personal injury action is insured against liability is inadmissible on grounds of relevance. (*Imparato v. Rooney* (1981), 95 Ill. App. 3d 11, 15, 419 N.E.2d 670.) An exception to the rule is that plaintiff, in good faith, can interrogate prospective jurors on their *voir dire* as to their interest and relationship to insurance companies. *Imparato*, 95 Ill. App. 3d at 15.

■ We find the question asked by plaintiff's counsel related neither to defendants' insurance coverage nor recent publicity concerning problems in the insurance industry in general and therefore was not a violation of the motion *in limine*. Though the trial judge rightfully commented to the lawyers that the remark was unnecessary and inappropriate, we find the trial court properly exercised its discretion when it denied the motion for mistrial and gave a cautionary instruction to the jury.

Defendant Aryan raises as a second issue on appeal whether the trial court should have granted defendant's motion for mistrial following plaintiff counsel's referral to an inadmissible contract provision during opening statements.

Aryan argues that the trial court should have granted its motion for mistrial after plaintiff's counsel, in his opening statement, read aloud a "hold harmless" clause from the construction contract between Aryan as general contractor and the United States Post Office. The contract was not admitted into evidence as an exhibit. The trial court denied Aryan's motion for mistrial and told jurors: "Ladies and gentlemen, the last statement by counsel dealing with the purported part of the agreement that he talked about in terms of indemnification, that one party indemnify the other and so forth should be disregarded totally by you because that deals with a question of law. So just disregard the last statement at all. It's not within your purview in terms of finding out what the facts are."

Opening statements are intended to inform the jury of the nature of the action and to give jurors an outline of the case so that they might better understand the testimony. (*Gillson v. Gulf, Mobile & Ohio Railroad Co.* (1969), 42 Ill. 2d 193, 196-97, 246 N.E.2d 269.) No statement may be made, however, which counsel does not intend to prove or cannot prove. *Gillson*, 42 Ill. 2d at 197.

■ Plaintiff argues that it mentioned the contract because it knew defendant intended to lay blame on the post office during trial. Though defendant argues that the post office was not a party and therefore the reference to the contract provisions should have been left out, it is true that Aryan's counsel repeatedly questioned a postal

employee, Christensen, and the defendants who testified about the parties responsible for inspecting the construction project. We believe that, in making reference to the contract provisions, plaintiff was anticipating a likely defense expected to be posed by defendants. The trial court found the reference to the contract to be inappropriate, but by giving the curative admonition to the jury, the court remedied any potential injury to defendant's case.

Defendant Aryan's third issue on appeal is whether the testimony of plaintiff's treating physician should have been stricken for his failure to render any opinion based on a reasonable degree of medical certainty about the causal connection between her fall and injury and defendant's negligence. Aryan contends the trial court erred in not striking Dr. West's testimony.

Aryan cites *Manion v. Brant Oil Co.* (1967), 85 Ill. App. 2d 129, 229 N.E.2d 171, in which the court held that there can be no recovery where there has been a failure to prove a causal connection between the injury and defendant's negligence which caused the accident. In *Manion,* the decedent's cause of death was directly attributable to degenerative diseases and one of the issues at trial was whether decedent's death was causally connected to the injuries he suffered in a traffic accident a year earlier.

■ We find *Manion* factually distinguishable. In *Manion,* plaintiff died a year after the accident and the doctor who testified could only say that decedent's cardiac failure was due to a preexisting condition which may have been aggravated by the traffic accident.

Here, occurrence witnesses testified that plaintiff appeared to have dislocated her elbow at the time of the fall. The nurse and other employees who attended to plaintiff testified, as did plaintiff herself, to the occurrence and plaintiff's injuries. The physician testified as to her injuries. It is for the jury to determine whether plaintiff has established the requisite causal connection based on all the evidence presented. The trial court correctly denied Aryan's request to strike West's testimony.

Defendant Aryan's fourth issue on appeal is whether the trial court should have granted defendant's motion for a directed verdict at the conclusion of plaintiff's case and the conclusion of all the evidence.

■ Aryan contends the trial court erred when it did not grant Aryan's motion for a directed verdict at the close of plaintiff's case. Aryan argues that plaintiff failed to present any evidence that the materials used on the dust barrier or the method of installation were improper. Aryan argues further that a postal supervisor inspected the

barrier, found it met post office specifications and there was insufficient evidence produced to establish Aryan's negligence or to support a judgment for plaintiff.

The court should direct a verdict only when all the evidence, viewed in the light most favorable to the litigant opposing the motion, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

Plaintiff identified testimony and evidence she contends was clearly sufficient for a finding in her favor and for the trial judge to deny Aryan's motion for a directed verdict.

Trial testimony established that several witnesses saw a metal beam protruding from the dust barrier immediately after plaintiff's fall. Several construction people testified about the installation of the dust barrier in late July and in the two weeks prior to plaintiff's accident. A final inspection was done on the barrier two days before plaintiff's fall, according to Herrero's testimony. We do not find the evidence so overwhelmingly favored Aryan that no contrary verdict could stand. Plaintiff produced sufficient evidence of defendant's alleged negligence to go to the jury. The question of Aryan's negligence was properly before the jury, and we find the trial court was correct to deny Aryan's motion for a directed verdict.

Defendant Aryan's fifth issue on appeal is whether plaintiff had the burden to prove that the general contractor had actual or constructive knowledge of the dangerous condition at the construction site.

Defendant contends that under section 343 of the Restatement (Second) of Torts, adopted in Illinois, a possessor of land is only subject to liability for physical harm caused to his invitee if he knows or, through reasonable care, would have discovered an unreasonable risk of harm, or the risks are so obvious that he may be expected to discover them. Restatement (Second) of Torts §343 (1984).

Defendant cites *Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, 566 N.E.2d 239, where the Illinois Supreme Court relied on section 343 when it found a general contractor's duty to keep the premises reasonably safe did not extend to injuries caused by known or obvious conditions unless the contractor anticipated the harm. *Deibert*, 141 Ill. 2d at 437.

■ We find the supreme court applied section 343 in *Diebert* because the contractor had possession over the entire parcel of land and the plaintiff, a construction worker, was injured on the land. We find *Diebert* and other cases cited by Aryan not relevant to this issue be-

cause each had to do with a claim against a possessor of land. Our analysis therefore need not focus on section 343 because Aryan was not the possessor of the land, but was in fact a contractor working in a portion of the post office building. Plaintiff, a postal employee and not an employee of Aryan, was injured while walking outside the construction area allegedly by a metal beam protruding out from the construction site into the public hallway. Aryan's president testified that the contract between his company and the United States Post Office permitted the installation of a temporary partition as long as it was made of durable, dust-tight and fire-resistant material. His testimony established that the dust barrier was constructed to specifications.

The general contractor owes a duty to persons who might reasonably be expected to come upon the premises or be in the vicinity of the construction site to keep the site safe and to see that adequate safeguards are furnished to protect against foreseeable injuries. (*Leatherman v. Schueler Brothers, Inc.* (1963), 40 Ill. App. 2d 56, 61, 189 N.E.2d 10.) Inherent in such a duty is the obligation to keep himself informed as to the condition of the work site.

Here defendant is a contractor working on a portion of someone else's land. Plaintiff has alleged defendant was negligent in securing the safety of the construction site area under his control.

The jury was instructed that "it was the duty of the defendants before and at the time of the occurrence to use ordinary care for the safety of the plaintiff." The jury was further instructed that "the plaintiff has the burden of proving each of the following propositions as to each defendant. First, that the defendant acted or failed to act in one of the ways claimed by the plaintiff as stated to you in these instructions, and that in so acting or failing to act, the defendant was negligent." The instruction also detailed the alleged actions or inactions by Aryan which the plaintiff had the burden of proving, including "Aryan, in circumstances where the safety of others is imperiled, negligently failed to take adequate precautions to prevent injury to the plaintiff caused by the negligence of its subcontractor[;] *** failed to perform [its contractual responsibility] with respect to the temporary partition or dust barrier so as to prevent a part thereof from being disengaged from the structure and extending and projecting out into and onto the surface of the adjacent pedestrian passageway[;] *** failed to inspect the subject temporary partition or dust barrier, and its site, so as to discover the fact that a part thereof had become disengaged from the structure and extended and projected out into and onto the surface of the adjacent pedestrian passageway[;] *** [a]nd

*** failed to repair, replace or correct the condition of the temporary partition or dust barrier ***."

We find the trial court adequately instructed jurors as to plaintiff's burden of proof.

Defendant Aryan's sixth issue on appeal is whether the jury verdict was against the manifest weight of the evidence.

Defendant Aryan contends the verdict rendered by the jury was against the manifest weight of the evidence and therefore should be vacated. Defendant cites plaintiff's second amended complaint which alleges the dust barrier was negligently installed and maintained.

Plaintiff must prove a duty owed by the defendant to the plaintiff, a breach of that duty and an injury that is proximately caused by defendant's breach. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374, 308 N.E.2d 617.) Whether a duty exists in a particular case is a question of law to be determined by the court. *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387.

■ Here, the jury's charge was to weigh the evidence to determine whether defendant breached a duty owed to plaintiff and as a result plaintiff was injured. The jury heard evidence from several witnesses to the accident and from plaintiff herself. Georgia Cornelius, Freida Young-Neal, Gwendolyn White and Victor K. Dobbins testified that they saw a metal object on the floor after plaintiff fell. Victor K. Dobbins, who worked for defendant Richard L. Dobbins and Company, Inc., one of the defendants, testified that he went to the woman's aid when she fell and he saw that a six-foot-long metal beam on the bottom of the dust barrier had come loose at one end and was sticking out six to eight inches from the wall. He testified he tried to push it back into the wall "so nobody else would trip over it," but it only moved about two inches. Plaintiff testified that she fell when she rounded the corner because her foot hit something metal.

The defendants presented no evidence in their own defense but cross-examined plaintiff's witnesses and ascertained information about the actual construction of the dust barrier. Herrero of Ace Acoustics testified that his company installed the dust barrier in the two weeks before plaintiff's accident. He admitted that his inspections were only visual and he never touched the barrier wall to determine whether the metal studs were affixed to the floor. Verma of Aryan International testified that his company was hired as general contractor and the barrier was inspected just two days before the accident. Christensen of the United States Post Office testified that the barrier was installed in compliance with United States Post Office specifications.

When determining whether a jury's verdict should be set aside, the test is not whether the evidence could have supported a verdict for Aryan if contrary inferences were drawn, but whether a contrary verdict is clearly required based on the evidence presented. (*Tedrowe v. Burlington Northern, Inc.* (1987), 158 Ill. App. 3d 438, 444, 511 N.E.2d 798.) We find no evidence that the jury's decision was clearly contrary to the manifest weight of the evidence.

Defendant Aryan's seventh issue on appeal is whether plaintiff's instructions and verdict forms to the jury regarding future pain and suffering were proper.

Aryan contends the trial court improperly provided the jury with instructions regarding the measure of damages for pain and suffering because such an instruction can only be given where pain and suffering are "reasonably certain to be experienced in the future." (Illinois Pattern Jury Instructions, Civil, No. 30.05 (2d ed. 1971).) Defendant argues that plaintiff has shown no such certainty. Defendant points out that plaintiff's only medical witness was precluded from testifying as to future care, treatment and prognosis. Defendant concedes that plaintiff testified to her own pain and suffering, but defendant argues that this testimony was suspect because it was subjective, elicited from a party who would benefit from a favorable verdict and provided no reasonable certainty of future pain and suffering.

Plaintiff Ross argued that the doctor's testimony was unrefuted and included an opinion that plaintiff's medical condition had "plateaued." He testified that she would never achieve the full range of motion in her left elbow. The only other testimony Dr. West gave as to the permanency of her condition was "[t]hat for the most part[,] the symptoms that she was experiencing then, she could expect to experience those symptoms in the future indefinitely and that I didn't expect any spontaneous improvement in the amount of pain that she was having in her elbow and the parasthesis and weakness in her fingers and hand."

■ A jury instruction on future pain and suffering is warranted if the jury hears "some evidence" on that point from either an expert or lay person. *Onion v. Chicago & Illinois Midland Ry. Co.* (1989), 191 Ill. App. 3d 318, 320, 547 N.E.2d 721.

The *Onion* court stated: "Illinois law does not require that the evidence supporting a jury instruction on future pain and suffering be only in the form of expert testimony, and we see no reason to change this rule of law. Jurors are capable of properly evaluating a plaintiff's testimony as to pain and suffering, and they will no doubt take into account a plaintiff's interest in the outcome of the lawsuit as well as a

plaintiff's lack of technical expertise on what his or her future physical condition, and related pain, may be." *Onion,* 191 Ill. App. 3d at 322.

In addition, we note that when the court considered proposed jury instructions, the judge stated that his ruling was based on plaintiff's testimony alone. We find the jury was properly instructed because plaintiff provided "some evidence" of plaintiff's future pain and suffering which appears to be "reasonably certain."

Defendant Aryan's eighth issue on appeal is whether the trial court ruled correctly in dismissing the defendant's subcontractor Dobbins as a party defendant during the course of trial.

Aryan argues that the trial court committed prejudicial error when it directed a verdict in favor of defendant Dobbins before the parties had a chance to make closing arguments and prior to jury deliberations. Aryan contends that Dobbins' dismissal left the jury with the impression that the other defendants were not dismissed from the suit because they were in some way liable. Aryan cites *Bothun v. Wallace* (1978), 61 Ill. App. 3d 365, 367, 377 N.E.2d 1054, 1056, where defendant contended the trial court improperly granted a codefendant's motion for a directed verdict prior to jury verdict. The *Bothun* court stated in *dicta* that "the better procedure in the trial court would be to avoid any possible prejudice to the defendant by reserving its ruling on the directed verdict until after the jury returns its verdict and then granting a judgment *n.o.v.* to the appropriate defendant." (61 Ill. App. 3d at 367.) The court stated that to grant the motion prematurely would permit the jury to infer that if the remaining defendant was not liable, the trial judge also would have released him. We note, however, that Aryan improperly relies on this decision as precedent because the passage it quoted from *Bothun* was *dicta* and was not the final holding of the court on the issue presented.

Plaintiff responds initially that the court's action was not prejudicial as is evidenced by the jury's subsequent finding in favor of Ace Acoustics. In addition, plaintiff argues that the court's action was not prejudicial. Plaintiff notes that Dobbins' motion was granted at the close of plaintiff's case, prior to Aryan presenting its case, and argues that the testimony against Dobbins, who was the demolition subcontractor, was inconclusive. Plaintiff contends that the only evidence against Dobbins came when Verma testified about the hole in the dust barrier but he stated that he did not know who made the hole or when it was made.

■ We find Dobbins was properly dismissed from the suit at the close of plaintiff's case. The evidence plaintiff presented against Dobbins failed to establish that Dobbins owed a duty to plaintiff, that Dobbins breached a duty or that a breach by Dobbins was the proximate cause of injuries suffered by plaintiff.

Defendant Aryan's ninth issue on appeal is whether the trial court should have submitted defendant's special interrogatory to the jury for determination.

Defendant Aryan argues that the trial court improperly rejected its request for a special interrogatory which sought a finding from the jury on the question of whether defendant had actual or constructive notice of a partially disengaged beam. Aryan contends that the special interrogatory related to an ultimate issue of fact and was in proper form and therefore should have been tendered to the jury.

The Illinois Code of Civil Procedure states: "Unless the nature of the case requires otherwise, the jury shall render a general verdict. The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact submitted to the jury in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law." Ill. Rev. Stat. 1989, ch. 110, par. 2—1108.

Plaintiff contends that a special interrogatory is improper if it merely asks for a finding on an evidentiary fact (*Le Flore v. Chicago Transit Authority* (1973), 12 Ill. App. 3d 71, 297 N.E.2d 758) and that therefore this special interrogatory was properly rejected by the court. A special interrogatory is not proper unless it relates to an ultimate fact of the case and unless an answer responsive to it would be inconsistent with some general verdict which might be returned upon the issues in the case. *Le Flore*, 12 Ill. App. 3d at 74.

■ We find that the special interrogatory proposed by defendant meets the latter part of the test in that it could be inconsistent with the jury's general verdict. If the question had been submitted to the jury and the jury had answered, "No, Aryan had no actual or constructive knowledge of the partially disengaged beam," the jury's general verdict finding that Aryan was nonetheless liable would indeed have been inconsistent.

This issue must turn on that part of the test as enunciated in *Le Flore*: whether the special interrogatory relates to an ultimate fact of the case.

Here the question of whether Aryan had actual or constructive knowledge of the partially disengaged beam is a material fact, but not the ultimate fact upon which the case must turn. (*Santos v. Chicago Transit Authority* (1990), 198 Ill. App. 3d 866, 556 N.E.2d 607.) What constitutes an interrogatory that relates to the question of ultimate fact is a question that previously has been before this court.

In *Snow v. Farwick* (1970), 121 Ill. App. 2d 40, 46, 257 N.E.2d 155, the appellate court upheld a trial court's decision to submit a special interrogatory to the jury from the defendant that stated: "Was the defendant, JOHN R. FARWICK, guilty of negligence which was the proximate cause of the plaintiff's alleged injuries?" The court found the question proper because it included the three elements of negligence, causation and injury. The court stated, "Each of the above questions are [*sic*] evidentiary in nature in that none of them singly are determinative of the rights of the parties. Plaintiff cannot prevail if he was not injured, nor if defendant was not negligent, nor if his injuries were not proximately caused by a negligent act of the defendant. All three items, negligence, causation, and injury are necessary to plaintiff's case. The absence of one of these items would render the interrogatory improper for failure to relate to the question of ultimate fact." 121 Ill. App. 2d at 46.

We have previously found that a general contractor has a nondelegable duty to keep his construction site safe. (*Leatherman v. Schueler Brothers, Inc.* (1963), 40 Ill. App. 2d 56, 61, 189 N.E.2d 10.) We also found he had a duty to keep himself informed as to its safety.

Therefore, defendant's actual or constructive knowledge of a dangerous condition is a material fact that bears on the negligence element in the case but by itself does not address proximate cause or injury, two other essential elements of negligence. Therefore, the trial court properly rejected defendant's request to submit the special interrogatory to the jury.

Defendant Aryan's tenth issue on appeal is whether the trial court ruled correctly that a verdict form returned by the jury naming only one of the two defendants constituted a finding of no liability as to the remaining nonnamed party defendant. Aryan contends the trial court erred when it interpreted the return of a jury verdict form naming only Aryan as the party against whom plaintiff was entitled to recover judgment and as a finding of no liability against Ace Acoustics. Aryan contends the court also erred when it subsequently dismissed Aryan's counterclaim against Ace for contribution. The record establishes that the jury had four verdict forms to choose from and the form returned by the jury stated at the top:

"We, the Jury, find for Jamesette Ross on Jamesette Ross' complaint and against the following defendants:

<u>Aryan International</u>

<u>- - - - - - - - -</u>."

Aryan contends that this lined-through portion of the returned verdict form is not conclusive evidence of the jury's intent to find against Aryan alone and to find Ace not liable to the plaintiff. Aryan acknowledges that a trial court can amend a verdict to conform to the intent of the jury but argues that in this case the judge could not do so because it would be a change in substance, not just a change in form. *Anderson v. Smith* (1980), 91 Ill. App. 3d 938, 415 N.E.2d 643.

Plaintiff argues that the trial judge could properly interpret the jury's findings to hold Aryan liable and Ace not liable because the evidence at trial supported such a finding. Upon receiving a verdict in irregular form, it is proper for the court to consider the entire record and to endeavor to determine the intent of the jury. *Lockett v. Board of Education for School District No. 189* (1990), 198 Ill. App. 3d 252, 257, 555 N.E.2d 1055, 1058.

In its response brief, defendant-appellee Ace distinguishes the *Anderson v. Smith* case by stating that it did not involve multiple defendants. Ace argues that the *Lockett* case is distinguishable because in *Lockett* the verdict forms returned were inconsistent on their face.

Ace argues that a verdict finding one of two defendants liable is in effect a verdict in favor of the defendant not named in the verdict. *Henderson v. Lisowski* (1964), 46 Ill. App. 2d 81, 86, 196 N.E.2d 518.

Ace argues further that Aryan's motion for a mistrial on this ground was improper because it was made both after the jury had returned its verdict (*McGrath v. Chicago & North Western Transportation Co.* (1989), 190 Ill. App. 3d 276, 279, 546 N.E.2d 670) and in a post-trial motion.

 We find the jury intended to assess liability only against Aryan. The record establishes that the jury was polled with each member answering affirmatively that this was his or her verdict. We find the verdict form was not inconsistent or vague, and we conclude that the trial judge properly interpreted the jury's verdict to find against Aryan and in favor of Ace.

Aryan also argues that since the jury was given a verdict form to specifically find in favor of defendant Ace and chose not to use it, the verdict against Ace is a nullity. *Lockett v. Board of Education for School District No. 189* (1990), 198 Ill. App. 3d 252, 555 N.E.2d 1055.

The jury was given four verdict forms identified as A, B, C, and D. The jury returned verdict form B. Aryan contends the jury should also have returned verdict form C because the trial court instructed the jury to use that form if it found in favor of one or more defendants. The record establishes that the jury was told to use verdict form C "[i]f you find in favor of one or more of the defendants and against Jamesette Ross." We believe the court properly interpreted the verdict form as expressing the jury's intent to find Aryan solely liable for plaintiff's injuries. The court verified the result when it polled the jury and confirmed its finding of liability against Aryan only. The failure of the jury to return form C to specifically find Ace not liable is insufficient as a ground for a mistrial.

Defendant Aryan's eleventh and final issue on appeal is whether plaintiff counsel's prejudicial remarks during closing arguments, when combined with other comments, had the cumulative effect of depriving defendant of a fair trial.

Plaintiff's counsel stated in closing arguments: "I don't know, it could be the case, but I wouldn't be surprised if this were only one in a series of lawsuits against these parties. Who knows." Aryan argues that this comment, in addition to the comment made in jury selection and in opening arguments, served to prejudice defendants during the eight day trial.

Plaintiff argues that the comments were not prejudicial and that Aryan's contentions of resulting prejudice are without foundation.

While we believe the comment in closing argument was improper, the trial judge sustained defendant's objection and granted defendant's request that the comment be stricken. The jury was properly instructed to disregard the comment. We find the trial court properly admonished the jury and that any prejudice to defendant's case was remedied.

In summary, we find that while plaintiff's counsel made improper remarks during jury selection, opening statements and closing arguments, the trial court properly remedied the error in each instance and no prejudice resulted. As to other alleged error cited by defendant Aryan, we find the trial court acted properly and we affirm.

For all the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

RAKOWSKI, P.J., and McNAMARA, J., concur.