DINA OSTRY, Plaintiff-Appellee, v. CHATEAU LIMITED PARTNERSHIP, Defendant-Appellant.

Second District   No. 2—92—0579

Opinion filed February 26, 1993.

James P. DeNardo and Patricia R. Morton, both of McKenna, Storer, Rowe, White & Farrug, of Chicago (Christine L. Olson, of counsel), for appellant.

Corbett & Mathews, of Chicago (Gregory S. Mathews, of counsel), for appellee.

JUSTICE QUETSCH delivered the opinion of the court:

Plaintiff, Dina Ostry, sued defendant, Chateau Limited Partnership, to recover damages for injuries allegedly suffered in a fall on a mound of icy snow in defendant's parking lot. A jury returned a verdict in plaintiff's favor in the amount of $30,633.94. The trial court subsequently granted plaintiff's motion for a new trial on damages only, and it entered judgment on the jury's award of $97,877.44. Defendant appeals.

Defendant contends on this appeal that: (1) the trial court erred by denying defendant's motion for leave to amend its answer to file the affirmative defense of plaintiff's comparative negligence before the trial on damages only; (2) the trial court improperly instructed the jury during the trial on damages only; (3) the jury verdict in the trial on damages only was against the manifest weight of the evidence; and (4) the trial court erred by denying defendant's motion for a directed verdict in the first trial on liability and damages.

Plaintiff testified during the first trial that on December 31, 1987, she parked her car in defendant's lot, exited her vehicle, and fell on a mound of icy snow located at the back of the car. Plaintiff stated that the mound of snow was five inches high, one foot wide, and ran the length of the parking lot.

Susan Muller Sisson, the property manager of defendant's Chateau Village Apartments in December 1987, testified that her job required her to make sure that someone was removing snow in a proper fashion and that the parking lots were cleaned off and salted as necessary. During December 1987, Sisson walked through the lots twice a day. During these walks, she noticed icy conditions that could be hazardous for people walking to and from their cars.

Gadi Cohen, Sisson's supervisor, contracted with George Lipp to provide snow removal in the parking lots. Lipp asked Robert Burns to plow defendant's lot. Burns began plowing after a snowfall on Decem-

ber 15, 1987. Lipp testified that Burns told him that he was at Chateau Village for approximately five hours. However, his truck broke down, and he had to return on December 16. Tenants complained that Burns was late getting to the job and that he failed to return to plow out parking stalls or clear away spill off. Responding to these complaints, Cohen hired James Fitzgerald, who plowed on December 21, 1987. Fitzgerald testified that the prior plower had angled the plow in such a manner that snow discharged to the rear of the vehicles.

Following another snowfall on December 28, 1987, Cohen gave Lipp's service another chance. Lipp testified that Burns plowed for 7½ hours on December 28 and 29. Sisson and Cohen testified that he plowed for a much shorter period of time. Lipp further testified that defendant fired him on December 29. Although Cohen and Sisson denied that Lipp's services were terminated, neither Lipp nor Burns returned to plow. No further snow fell between December 29 and December 31, and Sisson ordered no salting or plowing between the time that Burns discontinued plowing and plaintiff was injured.

The jury returned a verdict in favor of plaintiff for $30,633.94, with $10,000 attributed to disability, $14,230.94 attributed to the reasonable value of medical care, treatment and services rendered, and $6,403 to the value of lost earnings. It awarded no damages for pain and suffering. The trial court granted plaintiff's motion for a new trial on damages only because it could not harmonize the determination that plaintiff suffered necessary and reasonable medical expenses and disability without experiencing any pain and suffering. The second jury's award of $97,877.44 attributed $54,900 to disability, $22,500 to pain and suffering, $14,293.94 to medical care and treatment, and $6,183.50 to lost earnings.

Defendant first contends on appeal that the trial court erred by denying its motion for leave to amend its answer to assert the affirmative defense of plaintiff's comparative negligence prior to the trial on damages only. The trial court decided that the determination of plaintiff's comparative negligence involved questions of liability and negligence and that defendant waived the issue by not raising it during the first trial.

The decision whether to allow a party to amend its pleadings is within the sound discretion of the trial court, and such a decision will not be disturbed without a showing of an abuse of that discretion. (*Trans World Airlines, Inc. v. Martin Automatic, Inc.* (1991), 215 Ill. App. 3d 622, 627.) Defendant argues that the trial judge should have allowed the amendment to its answer because a new trial is a trial *de novo*, and the subsequent trial judge is not bound by the findings of

his predecessor. (*In re Application of Kane County Collector* (1985), 135 Ill. App. 3d 796, 801.) Further, defendant asserts that the issue of plaintiff's comparative negligence is relevant in a trial on damages only.

■ Although a new trial is a proceeding *de novo*, a new trial on damages is limited to damages only. Questions of liability are not relevant in a new trial on damages only. (*Carter v. Chicago & Illinois Midland Ry. Co.* (1986), 140 Ill. App. 3d 25, 28.) The issue of plaintiff's comparative negligence is a factor in determining liability commensurate with total fault. (*American Pharmaseal v. T E C Systems* (1987), 162 Ill. App. 3d 351, 357, citing *Bofman v. Material Service Corp.* (1984), 125 Ill. App. 3d 1053, 1064.) Therefore, since the determination of plaintiff's comparative negligence necessarily involves questions of liability, defendant cannot raise that issue for the first time in a trial on damages only. We hold that defendant waived the issue of plaintiff's comparative negligence by not raising it during the first trial. The trial court did not abuse its discretion by denying defendant's motion to amend its answer.

Defendant's second contention is that the trial court erred during the trial on damages only by giving several of plaintiff's instructions and refusing several of defendant's tendered instructions. The trial court is given considerable discretion in determining the form in which an instruction shall be given. (*Friedman v. Park District* (1986), 151 Ill. App. 3d 374, 390.) The criterion for determining the adequacy of jury instructions is whether, taken as a whole and in series, they fairly, fully, and comprehensively apprise the jury of the applicable legal principles. *Lurz v. Panek* (1988), 172 Ill. App. 3d 915, 925.

Defendant argues that the trial court erroneously submitted plaintiff's instruction No. 5A, the long form of Illinois Pattern Jury Instructions, Civil, No. 15.01 (3d ed. 1992) (hereinafter IPI Civil 3d), which reads as follows:

"When I use the expression 'proximate cause,' I mean any cause which, in natural or probable sequence, produced the injury complained of. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.]"

The trial court overruled defendant's objection to using the bracketed part of IPI Civil 3d No. 15.01 because defendant was allowed to argue at trial that a subsequent fall by plaintiff, and her failure to

perform her proscribed exercises, contributed to her injuries and damages.

■ This court has held that the bracketed part of the instruction was included to address those instances where there was evidence that the acts of someone or something other than the negligence of the parties was also a proximate cause of the injuries. (*Willson v. Pepich* (1983), 119 Ill. App. 3d 552, 557.) We have further held that the entire version of the instruction is proper only where there is evidence of actions of another person, other than the parties, which contributed to the injury. *Lounsbury v. Yorro* (1984), 124 Ill. App. 3d 745, 752.

However, in *Willson*, we stated:

"[T]he principal reason for not permitting the inclusion of the bracketed material in IPI Civil No. 15.01 is no longer present under the doctrine of comparative negligence. So long as the doctrine of contributory negligence was a viable doctrine in this State, the negligence of the defendant had to be the sole cause of the injury to the plaintiff when the only other possible contributing cause was the conduct of the plaintiff herself, and it was for this reason that the bracketed material was held to be improper in such cases." *Willson*, 119 Ill. App. 3d at 556.

We also recognize that the notes on use for this instruction in the third edition of IPI provide that the short version without the bracketed material *may* be used where there is no evidence that the conduct of any person other than a single defendant was a concurring or contributing cause. Therefore, the decision to give the short form of the instruction without the bracketed material is discretionary, rather than mandatory, even in cases where there is no evidence that something or someone other than the parties was a proximate cause of the injuries. In the instant case, the trial court did not abuse its discretion in giving plaintiff's instruction.

Defendant's third contention is that the trial court erred by giving an itemized verdict form. Defendant asserts that an itemized verdict form is in effect a special interrogatory because both devices require that special attention be drawn to certain elements of the case, and the jurors are instructed to make specific determinations as to certain factual issues. Defendant reasons that the purpose of an itemized verdict is basically the same as that of a special interrogatory, to permit the court to check the reasoning process of the jurors.

A special interrogatory must request a finding on an ultimate fact of the case. (*Ross v. Aryan International, Inc.* (1991), 219 Ill. App. 3d 634, 650.) Defendant argues that an itemization of damages does not

involve an ultimate question of fact and is thus an improper special interrogatory.

■ We disagree with defendant's argument and hold that an itemized verdict is not a special interrogatory. An itemized verdict is *sui generis*, one of its own kind. Our legislature has recognized the distinction between the two devices by providing for special interrogatories under section 2—1108 of the Code of Civil Procedure, and itemized verdicts in section 2—1109. Ill. Rev. Stat. 1991, ch. 110, pars. 2—1108, 2—1109.

■ Furthermore, the trial court did not abuse its discretion by giving the itemized verdict form. Section 2—1109 of the Code of Civil Procedure states that where damages for personal injury are assessed by the jury "the verdict shall be itemized so as to reflect the monetary distribution among economic loss and non-economic loss, if any." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1109.) The giving of such an instruction is mandatory. *Henderson v. Hudson* (1984), 121 Ill. App. 3d 780, 785.

Since the trial court did not err in giving the itemized verdict form, we reject defendant's further argument that the court should have given defendant's tendered verdict forms.

Defendant next objects to the trial court's submission of plaintiff's instruction No. 14, which reads:

> "If the Defendant is liable for an injury which impairs the physical condition of another's body, the Defendant is also liable for harm sustained in a subsequent accident which would not have occurred had the Plaintiff's condition not been impaired."

This instruction quotes from section 460 of the Restatement (Second) of Torts, which states:

> "If the negligent actor is liable for an injury which impairs the physical condition of another's body, the actor is also liable for harm sustained in a subsequent accident which would not have occurred had the other's condition not been impaired, and which is a normal consequence of such impairment." Restatement (Second) of Torts §460 (1965).

See *Stephenson v. Air Products & Chemicals, Inc.* (1969), 114 Ill. App. 2d 124, 133.

The trial court did not include in plaintiff's instruction No. 14 the Restatement's requirement that the subsequent accident must be a normal consequence of the initial impairment. However, the trial court did give plaintiff's instruction No. 6, which states in relevant part:

"It has been determined that the defendant, CHATEAU LIMITED PARTNERSHIP, is liable for any injury and damage which may have proximately resulted from the occurrence. You need only decide what injuries and damages to the plaintiff, DINA OSTRY, resulted from this occurrence and what amount of money will reasonably and fairly compensate the plaintiff, DINA OSTRY, for those injuries and damages."

The trial court also gave plaintiff's instruction No. 5A, which defined the term "proximate cause."

■ The propriety of an instruction depends on whether all of the instructions, taken as a whole, were sufficiently clear so that the jury was not misled, and only where it is obvious the jury was misled has there been reversible error. (*Webb v. Angell* (1987), 155 Ill. App. 3d 848, 854.) While it would have been preferable for the trial court to quote the entire section 460 of the Restatement (Second) of Torts, we hold that in this case the instructions, taken as a whole and in series, fairly, fully, and comprehensively apprised the jury of the applicable legal principles (*Lurz v. Panek*, 172 Ill. App. 3d 915) and did not mislead the jury.

■ Defendant contends that the trial court erred by not giving its instruction on plaintiff's comparative fault. Since plaintiff's comparative negligence was not an issue in the trial on damages only, defendant was not entitled to an instruction on that issue. *Aimonette v. Hartmann* (1991), 214 Ill. App. 3d 314, 323-24.

Defendant next argues that it is entitled to either a new trial on damages or a remittitur because the second jury's award of $54,900 for disability and $22,500 for pain and suffering is against the manifest weight of the evidence. In its post-trial motion, defendant requested a judgment notwithstanding the verdict or a new trial on both liability and damages. Defendant waived its right to request a remittitur by not raising that issue in its post-trial motion. However, a request for a new trial on certain aspects of a case is included in a request for a new trial. (*Argueta v. Baltimore & Ohio Chicago Terminal R.R. Co.* (1991), 224 Ill. App. 3d 11, 19.) We, therefore, find that defendant has not waived its right to argue for a new trial on damages only.

The amount of a verdict is generally within the discretion of the jury and should not be disturbed on review unless it is so large as to indicate passion or prejudice. (*Rodda v. White* (1991), 222 Ill. App. 3d 989, 999.) Factors to be considered in determining an award of damages in a personal injury case include the permanency and extent of injury, possible future deterioration, and restrictions on daily activity

because of the injury. *Young v. Hummel* (1991), 216 Ill. App. 3d 303, 310.

Plaintiff testified that after her fall on December 31, 1987, she felt like there was a knife underneath her kneecap. After her first surgery on January 4, 1988, she felt pain akin to a "migraine in the knee." As part of her physical therapy, the therapist bent her right leg and made the heel hit the back of her thigh. This manipulation caused her "excruciating pain." Plaintiff suffered a strong aching pain following her second surgery. Another manipulation in July 1988 caused her further pain.

Scott Beecher, plaintiff's physical therapist, testified that the July manipulation caused plaintiff to feel more pain than other patients. He remembered her crying on several occasions. Doctor Chong, who performed the first surgery, testified that plaintiff felt severe pain following the surgery. Doctor Dominguez performed the second surgery. He testified that they were unable to control the pain after the procedure without injectible medication.

Plaintiff further testified that she walks with a limp. She feels pain when she carries heavy objects, including her children. She cannot play with her children in the same manner as before. She has a harder time walking upstairs, cleaning the tub or taking a bath. Both Doctor Chong and Doctor Dominguez testified that plaintiff runs a greater chance of developing degenerative arthritis. Plaintiff cannot completely straighten her knee. Her injury is permanent.

■ We conclude, based on the evidence, the amount the jury awarded as damages was not so large as to indicate passion or prejudice. Defendant is not entitled to a new trial on damages.

Defendant's final argument is that the trial court erred by not granting its motion for a directed verdict in the first trial. "[V]erdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.

In order for a property owner to be liable in a case involving a slip and fall on snow and ice, it must be shown that he has in some way caused an unnatural accumulation of ice and snow or that he aggravated a natural condition. (*Williams v. Lincoln Tower Associates* (1991), 207 Ill. App. 3d 913, 916.) Plaintiff must show that the property owner had actual or constructive knowledge of the condition. (*American States Insurance Co. v. A.J. Maggio Co.* (1992), 229 Ill. App. 3d 422, 426.) Liability can also arise if the property owner un-

dertakes to remove the snow and ice from his property and does so negligently. *Williams*, 207 Ill. App. 3d at 916.

■ We hold that plaintiff put forward enough evidence to withstand defendant's motion for a directed verdict. Evidence presented at the first trial showed that defendant was responsible for providing snow removal in the parking lots. The property manager for defendant's Chateau Village Apartments at the time of plaintiff's accident testified that she walked through the lots twice a day and noticed icy conditions that could be hazardous for people walking to and from their cars. Defendant contracted with George Lipp to provide plowing services. After Lipp's service plowed on December 15 and 16, tenants complained that his plower was late and failed to return to plow out parking stalls or clear away spill off. Defendant then hired Fitzgerald, who plowed on December 21. Fitzgerald testified that the previous plower had angled his plow in such a manner that snow discharged to the rears of the vehicles. Lipp's service returned to plow following another snowfall on December 28. Lipp's plower worked on December 28 and 29 before leaving. Lipp testified that he was fired. Defendant denied that his services had been terminated. In response to a question about what she had noticed about the type of plowing job done after the December 28 snowfall, plaintiff testified that snow would be piled up behind the cars. No further snow fell between December 29 and 31. Defendant ordered no further plowing from the time that Lipp's service left on December 29 to the time that plaintiff fell.

We believe that, viewing the evidence in the aspect most favorable to plaintiff, a jury could reasonably find that defendant was aware that Lipp's service plowed snow up against the backs of cars parked in defendant's lot. Plaintiff's fall can be attributed to defendant's negligence in removing snow from its lot. The trial court did not err in denying defendant's motion for a directed verdict.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

WOODWARD and GEIGER, JJ., concur.